The Honorable Marsha J. Pechman

———— FILED ———— ENTERED
———— LODGED ———— RECEIVED

JUN 23 2003  MR

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ———— DEPUTY

01-CV-01528-DECL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS R. DREILING, on behalf of
INFOSPACE, INC,

       Plaintiff,

       v.

STILES A. KELLETT, JR., an individual;
and KELLETT PARTNERS, LP, a limited
partnership; and NAVEEN JAIN and
ANURADHA JAIN, husband and wife, and
their marital community, THE JAIN
FAMILY IRREVOCABLE TRUST, THE
NAVEEN JAIN GRAT NO. 1 TRUST, and
THE ANURADHA JAIN GRAT NO. 1
TRUST,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO.  C01-1528P

JUNE 23, 2003 DECLARATION OF
WILLIAM H. BEAVER

Noted for Consideration:  July 2, 2003

I, William H. Beaver, declare as follows:

1.    I am over age 18 and competent to be a witness herein and am making this declaration based on facts within my own personal knowledge.

ORIGINAL

JUNE 23, 2003 DECLARATION
OF WILLIAM H. BEAVER - 1
[C01-1528P]
#471547 v1 / 36238-001

Law Offices
KARR · TUTTLE · CAMPBELL
A Professional Service Corporation
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

2.      I am a shareholder in the law firm of Karr Tuttle Campbell and am one of the attorneys representing the Jain Trusts and Anuradha Jain in this matter.

3.      Since my very recent involvement in this matter, it has appeared clear to me that one of the central facts in this matter concerns the Indemnity Agreement entered into between Naveen Jain, InfoSpace.com, Inc., and the remaining members of the InfoSpace board of directors.  Not only are the specific terms and conditions of the agreement important, but also important are the timing of the negotiations of the agreement and the date the agreement was actually finalized.

4.      In attempting to sort out the sequence of events concerns the Indemnity Agreement, I contacted the attorney who represented Mr. Jain concerning the negotiations of the Agreement, Bruce Robertson of Garvey Schubert & Barer.  I was sent e-mails that originated from Perkins Coie which attached various drafts of the Indemnity Agreement.

5.      This court was provided as the final Indemnity Agreement a document dated December 11, 1998.  *See* Exhibit 23 to Declaration of Richard  E. Spoonemore in Support of Plaintiff's Response and Cross Motion for Summary Judgment.  The court will note that the "footer" on the document is dated December 11, 1998.

6.      When I hit the "view footer" function on my computer while reviewing the electronic versions of the draft Indemnity Agreements sent to me with the above referenced e-mails, I noted that the footers on two of the documents indicated that they had been drafted on December 12 and December 14, 1998.  I thus inquired how this could be and eventually

JUNE 23, 2003 DECLARATION
OF WILLIAM H. BEAVER - 2
[C01-1528P]
#471547 v1 / 36238-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1   learned that in fact the Indemnity Agreement continued to be negotiated through December 14,

2   1998.

3

4       7.      I have attached as exhibits the various forms of the Indemnification Agreement

5   that I have located to date during my efforts to sort out both the terms of the final Indemnity

6   Agreement and the chronology of events leading up to the finalization of that Agreement.

7       8.      Attached as *Exhibit 1* is an electronic version of the Indemnity Agreement

8   which by footer was dated December 10, 1998 (note that the last date in the footer is simply

9

10  the date on which I printed the document).

11      9.      Attached as *Exhibit 2* is a red-lined version of the Indemnification Agreement

12  that was apparently prepared on December 11, 1998.  It is clear from looking at paragraph

13

14  1(a), that there was at least one version of the draft indemnification agreement between

15  *Exhibit 1* and *Exhibit 2*.

16      10.     Attached as *Exhibit 3* is yet a further version of the Indemnification Agreement

17

18  generated on December 11, 1998.

19      11.     Attached as *Exhibit 4* is a red-lined version of the Indemnification Agreement

20  generated on December 14, 1998 with the red-lines apparently superimposed upon a version of

21
    the Indemnification Agreement that was generated on December 12, 1998.   It is my
22

23  understanding from Mr. Robertson that this is actually the final version of the Indemnification

24  Agreement agreed to by all parties.

25      12.     Attached as *Exhibit 5* is a copy of the Indemnification Agreement that was

26
    attached to InfoSpace's prospectus filed with the SEC.  At the top of this exhibit is reflected
27

28

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

when the document was actually filed with the SEC. Several of the pages reflect that they were filed on December 11, 1998, but several of the other pages reflect that they were filed on December 14, 1998. Although I have not been able to determine the exact sequence of events, it appears that the December 11, 1998 version of the Indemnity Agreement was originally filed with the SEC and then when the Indemnity Agreement was finalized on December 14, those pages that were different from the December 11 version were re-filed with the SEC.

13.     Attached as *Exhibit 6* is a further version of the Indemnification Agreement which has a February 11, 1999 date on the footer, except for the signature pages for Mr. Jain and Mr. Cunningham which have a December 11, 1998 footer date. I have reviewed this document and do not believe it contains any substantive changes from the final version agreed to on December 14.

DATED in Seattle, Washington this 25th day of June, 2003.

_____
William H. Beaver

JUNE 23, 2003 DECLARATION
OF WILLIAM H. BEAVER - 4
[C01-1528P]
#471547 v1 / 36238-001

*Law Offices*
KARR·TUTTLE·CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

# EXHIBIT 1

## Indemnification Agreement

This Indemnification Agreement (this "*Agreement*") dated as of December __, 1998 is made between Naveen Jain ("*Mr. Jain*"), InfoSpace.com, Inc., a Delaware corporation (the "*Company*"), all the current and future members of the Company's board of directors (excluding Mr. Jain) (the *"Board"*), and _____ (the "*Escrow Agent*"). Collectively, the Company and the members of the Board shall be referred to herein as the "*indemnified parties*".

## RECITAL

To induce the Company's current and future directors to accept the position of, or to continue to serve as, directors of the Company, Mr. Jain has agreed to indemnify the Board and the Company against certain losses.

## AGREEMENT

### 1. Indemnification of the Company and the Board

(a)    Mr. Jain agrees to hold harmless and indemnify the Company and the Board from and against all losses, liabilities, damages or expenses incurred by the Company or the Board, including reasonable fees and expenses of counsel, that result from any obligation or liability arising out of or in connection with the business of the Company on or prior to November 30, 1998, with the exception of those claims for the issuance of the Company's common stock ("*Shares*") or options to acquire Shares involving, in the aggregate, 15,000 or fewer Shares (collectively, the "*Losses*").

(b)    (b)    Notwithstanding the foregoing, the indemnification provided hereby shall be unavailable for any obligation or liability of the Company that is specifically reflected or reserved against in the Company's financial statements for the fiscal years ended 1996, 1997 and the nine-month period ended September 30, 1998, which are attached hereto as Exhibit A, other than those obligations or liabilities arising out of claims made by former employees or consultants of the Company or alleged former employees or consultants of the Company.

### 2. Limitations

(a)    Claims for indemnification made under this Agreement may be made only during the period from the date hereof until five years after the date hereof.

(b)     No indemnified party shall be entitled to receive any indemnification payment with respect to claims for indemnification made under Section 1, until aggregate Losses that all indemnified parties would be otherwise entitled to receive as indemnification exceed $100,000 (the "***Threshold***"); provided, however, that once such aggregate Losses exceed the Threshold, such party shall be entitled to receive indemnification payment for the aggregate Losses that they would be entitled to receive without regard to the Threshold.

(c)     The maximum aggregate amount that the indemnified party shall be entitled to under Section 1 is the Escrowed Stock (as defined below).

## 3.     Procedure

(a)     Any indemnified party hereto seeking indemnification hereunder shall notify Mr. Jain in writing reasonably promptly after the assertion against the indemnified party of any claim by a third party or a derivative claim (a "***Third-Party Claim***") in respect of which the indemnified party intends to base a claim for indemnification hereunder, but the failure or delay so to notify Mr. Jain shall not relieve it of any obligation or liability that it may have to the indemnified party except to the extent that Mr. Jain demonstrates that its ability to defend or resolve such Third Party Claim is adversely affected thereby.

(b)     (i)     Mr. Jain shall have the right, upon written notice given to the indemnified party within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, to assume the defense or handling of such Third Party Claim, at Mr. Jain's sole expense, in which case the provisions of Section 3(b)(ii) below shall govern. (ii) Mr. Jain shall select counsel reasonably acceptable to the indemnified party in connection with conducting the defense or handling of such Third Party Claim, and Mr. Jain shall defend or handle the same in consultation with the indemnified party, and shall keep the indemnified party timely apprised of the status of such Third Party Claim, and shall not, without the prior written consent of the indemnified party, directly or indirectly assume any position or take any action that would impose any obligation of any kind on or restrict the actions of the indemnified party.  Mr. Jain shall not, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, agree to a settlement of any Third Party Claim that could directly or indirectly lead to liability or create any financial or other obligation on the part of the indemnified party for which the indemnified party is not entitled to indemnification hereunder.  The indemnified party shall cooperate with Mr. Jain and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense.  Notwithstanding the foregoing, in the event Mr. Jain fails to conduct the defense or handling of any Third

Party Claim in good faith after having assumed such defense or handling, then the provisions of Section 3(c)(ii) below shall govern.

(c)    (i)    If Mr. Jain does not give written notice to the indemnified party, within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, of Mr. Jain's election to assume the defense or handling of such Third Party Claim, the provisions of Section 3(c)(ii) below shall govern. (ii) The indemnified party may, at Mr. Jain's expense, select counsel in connection with conducting the defense or handling of such Third Party Claim and defend or handle such Third Party Claim in such manner as it may deem appropriate, provided, however, that the indemnified party shall keep Mr. Jain timely apprised of the status of such Third Party Claim.  If the indemnified party defends or handles such Third Party Claim, Mr. Jain shall cooperate with the indemnified party and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense.

(d)    If the indemnified party intends to seek indemnification hereunder, other than for a Third Party Claim, then it shall notify Mr. Jain in writing within six months after its discovery of facts upon which it intends to base its Claim for indemnification hereunder, but the failure or delay so to notify Mr. Jain shall not relieve Mr. Jain of any obligation or liability that Mr. Jain may have to the indemnified party except to the extent that Mr. Jain demonstrates that Mr. Jain's ability to defend or resolve such Claim is adversely affected thereby.

## 4.    Establishment of Escrow Fund

(a)    On the date hereof, Mr. Jain shall deliver to the Escrow Agent certificates representing 1,000,000 shares of the Company's Common Stock (the "*Escrowed Stock*"), along with an assignment separate from such certificate properly endorsed for assignment in blank.  The Escrowed Stock and all cash obtained by the Escrow Agent hereunder shall be referred to as the "*Escrow Fund*".

(b)    Mr. Jain will have all rights to the Escrowed Stock, including, without limitation, the right to vote the Escrowed Stock and the right to receive cash dividends in respect of the Escrowed Stock; provided, however, that, until this Agreement is terminated pursuant to Section 9, the Escrow Agent shall have (i) the right to possess the Escrowed Stock and (ii) the right to receive securities or other property in exchange therefor or in respect thereof or dividends (other than cash dividends) or other distributions thereon or with respect thereto.

(c)    Mr. Jain will have the right to sell the Escrowed Stock, provided that all the proceeds of such sale  remain part of the Escrow Fund and available for payment

to an indemnified party pursuant to Section 6 until this Agreement is terminated pursuant to Section 9.  Any such sale shall be made only through a brokers' transaction on the open market for cash consideration.

## 5.     Claims on Escrow Fund

(a)     If the indemnified party shall incur Losses, it shall within ten days of learning of facts giving rise to the claim for Losses deliver to the Escrow Agent and Mr. Jain a certificate (a "*Claim Certificate*") signed by a member of the Board or an officer of the Company stating that one or more members of the Board and/or Company has incurred the Losses specified in such Claim Certificate and setting forth in reasonable detail the facts giving rise to the claim and the basis for the claim.

(b)     Mr. Jain shall have 20 business days after delivery to the Escrow Agent of any Claim Certificate to give to the Escrow Agent and the Board or the Company, as the case may be, written notice of a dispute ("*Dispute Notice*") with respect to such Claim Certificate setting forth in reasonable detail the nature of the dispute.

(c)     If at the end of the 20-day period described in Section 5(b) the Escrow Agent shall not have received a Dispute Notice with respect to any Claim Certificate, such Claim Certificate shall constitute full authority to the Escrow Agent to proceed to pay pursuant to the provisions of Section 6 the Losses specified in such Claim Certificate; provided, however, that, if the Escrow Agent shall have received a Dispute Notice, the Escrow Agent shall not pay any part of the Escrow Fund to the indemnified party until notified of the resolution of the dispute pursuant to the provisions of Section 8.

## 6.     Payment of Claims

The Escrow Agent shall pay a Claim Certificate by transferring, delivering and assigning to the Board or the Company, as the case may be, such number of shares of the Escrowed Stock (rounded to the net highest whole share) that, when valued as set forth in Section 7, shall have a value equal to the amount required to make or complete such payment; provided, however, that the Board or the Company, as the case may be, shall immediately pay in cash to the Escrow Fund any amounts in excess of the Claim Certificate that may occur due to the requirement that only whole shares of the Escrowed Stock may be transferred.

## 7.     Valuation

The Escrowed Stock shall be valued as follows:  at (a) the average of the closing prices for the Escrowed Stock on any national securities exchange on which

such stock is listed (or, if listed on more than one such exchange, then on the one located in New York); (b) the average of the closing prices reported on the Nasdaq National Market; (c) the average of the bid and asked prices reported on the Nasdaq Stock Market; (d) or the average of the bid and asked prices appearing on the "pink sheets" of the National Quotation Bureau, Inc.  All averages shall be computed for the 30 trading days immediately preceding the date of the Claim Certificate.

## 8.    **Dispute Resolution**

Any dispute with respect to any Claim Certificate or any other provision of this Agreement shall be resolved as follows:

(a)    The disputing parties shall first attempt to settle the dispute.  Any settlement shall be reflected in writing and delivered to the Escrow Agent. The Escrow Agent shall act according to such written settlement agreement.

(b)    If within 30 days of when the Dispute Notice was delivered to the Escrow Agent the disputing parties have not arrived at a settlement agreement, the dispute shall be submitted to arbitration as follows:

(i)    the Board shall select one arbitrator, Mr. Jain shall select one arbitrator (who shall be acceptable to holders of a majority of the Escrowed Stock), and the Board and Mr. Jain together shall select a third arbitrator;

(ii)    The arbitration shall then be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association;

(iii)    Judgment may be rendered upon the award determined by the arbitrators in any court having jurisdiction thereof;

(iv)    Should an injunction be sought, the amount of any bond required shall not exceed $500; and

(v)    Within ten days of receiving notice of an arbitration award, unless restrained by court order, the Escrow Agent shall act according to the mandate of such arbitration award.

## 9.    **Termination**

(a)    The escrow provided for herein shall terminate five years after the date hereof (the "***Termination Date***")

(b)      Notwithstanding the provisions of (a) and (c) of this Section 9, if the Board or the Company shall in good faith, prior to the Termination Date, have filed with the Escrow Agent and Mr. Jain a certificate signed by a member of the Board or an officer of the Company to the effect that an item of Losses (the maximum amount of which shall be specified in good faith in such certificate) has been incurred by or asserted against the Board or the Company, in respect of the settlement or discharge of which the Board or the Company would be entitled to receive a payment under this Agreement, and that the existence or the amount of such Losses remains undetermined, then the Escrow Agent shall withhold from distribution that would otherwise be made pursuant to Section 9(c) a number of shares of Escrowed Stock that, when valued as provided in Section 7, shall have a value equal to the maximum amount of such item of Losses as set forth in such certificate, and shall distribute the remainder of the Escrow Fund deliverable under Section 9(c) to Mr. Jain.

(c)      Upon the termination of the escrow as aforesaid, the Escrow Agent shall disburse and Mr. Jain shall be entitled to receive that portion of the Escrow Fund as to which the escrow shall have so terminated.  Any delivery of shares of Escrowed Stock pursuant to this Section 9(c) shall be of full shares, and the Escrow Agent shall sell the number of shares of Escrowed Stock that shall equal the aggregate of all fractions to which Mr. Jain would otherwise be entitled. Promptly after the resolution of any item of Losses that was asserted but not resolved by the Termination Date, the Escrow Agent shall deliver to the Board or the Company, as the case may be, such portion of the Escrow Fund to which it is entitled and shall deliver the balance of the Escrow Fund to Mr. Jain.

## 10.    Notices

Unless written designation of a different address is filed with each of the other parties hereto, all notices required to be given under this Agreement shall be deemed to have been properly given if mailed by registered mail, addressed as follows:

the Board or the Company:

with a copy to:

        Perkins Coie LLP
        1201 Third Ave., 40th Floor
        Seattle, WA 98101-3099
        Fax:  (206) 583-8500
        Attention:  Stephen Graham

Naveen Jain:

with a copy to:

Escrow Agent:

## 11.    Duties and Liability of Escrow Agent

The Escrow Agent may act on any instrument or other writing believed by the Escrow Agent to be genuine and to be signed or presented by the proper person and shall not be liable in connection with the performance by the Escrow Agent of its duties pursuant to the provisions of this Agreement, except for its own willful default or gross negligence. The Escrow Agent shall be, and hereby is, jointly and severally indemnified and saved harmless, by the parties hereto, from all losses, costs and expenses that may be incurred by it as a result of its involvement in any litigation arising from performance of its duties hereunder, provided that such litigation shall not result from any action taken or omitted by the Escrow Agent and for which it shall have been adjudged negligent.

## 12.    Successors

This Agreement and all action taken hereunder in accordance with its terms shall be binding on and inure to the benefit of the Board, the Company and the Escrow Agent and their respective successors and assigns, and Mr. Jain and their respective successors, assigns, heirs, executors, administrators and legal representatives.

## 13.    Substitution of Escrow Agent

The Escrow Agent, or any successor to it hereafter appointed, may at any time resign by giving notice in writing to the Board, the Company and Mr. Jain and shall be discharged of its duties hereunder upon the appointment of a successor Escrow Agent as hereinafter provided. In the event of any such resignation, a successor Escrow Agent, who shall be a shall be appointed by the Board. Any such successor Escrow Agent shall deliver to the Board, the Company and Mr. Jain a written instrument accepting such appointment hereunder, and thereupon it shall succeed to all the rights and duties of the Escrow Agent hereunder.

## 14.    Appointment of Escrow Agent

the Board, the Company and Mr. Jain hereby appoint _____ as the Escrow Agent to serve in accordance with the terms of this Agreement, and _____ hereby agrees to act as Escrow Agent under this Agreement.

## 15.    Fee of Escrow Agent

The Company shall pay the fees of the Escrow Agent serving under this Agreement.

## 16.    Entire Agreement

This Agreement is the entire agreement of the parties regarding its subject matter and supersedes all prior written or oral communications or agreements.

## 17.    Severability

The provisions of this Agreement shall be severable. If this Agreement or any portion shall be invalidated on any ground by any court of competent jurisdiction, then the remainder of this Agreement shall not be affected thereby and shall be given full force and effect and remain binding upon the parties.

18.    **Governing Law**

This Agreement and the rights and obligations of the parties shall be governed by and construed in accordance with the laws of the state of Washington, without giving effect to principles of conflicts of law.

19.    **Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

20.    **Amendments; Waivers; Addition of New Board Members**

(a)    Neither this Agreement nor any provision may be amended except by written agreement signed by the parties.  No waiver of any breach or default shall be considered valid unless in writing, and no such waiver shall be deemed a waiver of any subsequent breach or default.

(b)    Notwithstanding the foregoing, this Agreement shall be deemed automatically amended to include as a  party and a member of the Board each additional director elected or appointed to the Company's board of directors.

21.    **Successors and Assigns**

This Agreement shall be binding upon Mr. Jain and his successors and assigns, and inure to the benefit of the Board and the Company and their heirs, legal representatives and assigns.

(Signature page follows)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

# EXHIBIT 2

## Indemnification Agreement

This Indemnification Agreement (this "*Agreement*") dated as of December __, 1998 is made between Naveen Jain ("*Mr. Jain*"), InfoSpace.com, Inc., a Delaware corporation (the "*Company*") and, all the current and future members of the Company's board of directors (excluding Mr. Jain) (the "*Board*"), and ~~(the "*Escrow Agent*")~~. Collectively, the Company and the members of the Board shall be referred to herein as the "*indemnified parties*".

## RECITAL

To induce the Company's current and future directors to accept the position of, or to continue to serve as, directors of the Company, Mr. Jain has agreed to indemnify the Board and the Company against certain losses.

## AGREEMENT

### <u>1</u>~~1~~.    Indemnification of the Company and the Board

(a)    Mr. Jain agrees to hold harmless and indemnify the Company and the Board from and against all losses, liabilities, damages or expenses incurred by the Company or the Board, ~~including reasonable fees and expenses of counsel,~~ that result from any obligation or liability arising out of or in connection with <u>each of the following (collectively, the "Losses")</u>:

> (i)    <u>the hiring or termination of any employee or consultant of the Company on or before September 30, 1998;</u>
>
> (ii)    <u>any commercial contract of the Company entered into on or before September 30, 1998 (including but not limited to contracts with vendors, suppliers, content providers, affiliates, licensees and licensors);</u>
>
> (iii)    <u>the issuance of the Company's common stock ("*Shares*") or options to acquire Shares occurring on or before September 30, 1998, except for such issuances involving, in the aggregate, 15,000 or fewer Shares;</u>
>
> (iv)    <u>any Shares or options to acquire Shares issued in connection with claims made by Mark Kaleem (other than the first 500,000 Shares or options to acquire Shares issued to Mark Kaleem),</u>

(v)     any act of fraud by Mr. Jain occuring on or before September 30, 1998.

~~the business of the Company on or prior to November 30, 1998, with the exception of those claims for the issuance of the Company's common stock ("*Shares*") or options to acquire Shares involving, in the aggregate, 15,000 or fewer Shares (collectively, the "*Losses*").~~

(b)     ~~(b)~~ Notwithstanding the foregoing, the indemnification provided hereby shall be unavailable for any obligation or liability of the Company that is specifically reflected or reserved against in the Company's financial statements for the fiscal years ended 1996, 1997 and the nine-month period ended September 30, 1998, which are attached hereto as Exhibit A (other than obligations or liabilities related to claims made by Mark Kaleem or G. Kent Plunkett).~~, other than those obligations or liabilities arising out of claims made by former employees or consultants of the Company or alleged former employees or consultants of the Company.~~.

## 2.     Limitations

(a)     Claims for indemnification made under this Agreement may be made only during the period from the date hereof until five years after the date hereof.

(b)     No indemnified party shall be entitled to receive any indemnification payment with respect to claims for indemnification made under Section 1, until aggregate Losses that all indemnified parties would be otherwise entitled to receive as indemnification exceed $100,000 (the "*Threshold*"); provided, however, that once such aggregate Losses exceed the Threshold, such party shall be entitled to receive indemnification payment for the aggregate Losses that they would be entitled to receive without regard to the Threshold.

(c)     The maximum aggregate amount that the indemnified party shall be entitled to under Section 1 is the Escrowed Stock (as defined below).

## 3.     Procedure

(a)     Any indemnified party hereto seeking indemnification hereunder shall notify Mr. Jain in writing reasonably promptly after the assertion against the indemnified party of any claim by a third party or a derivative claim (a "*Third-Party Claim*") in respect of which the indemnified party intends to base a claim for indemnification hereunder, but the failure or delay to so~~so to~~ notify Mr. Jain shall not

relieve it of any obligation or liability that it may have to the indemnified party except to the extent that Mr. Jain demonstrates that its ability to defend or resolve such Third Party Claim is adversely affected thereby.

(b)    (i)    Mr. Jain shall have the right, upon written notice given to the indemnified party within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, to assume the defense or handling of such Third Party Claim, at Mr. Jain's sole expense, in which case the provisions of Section 3(b)(ii) below shall govern. (ii) Mr. Jain shall select counsel reasonably acceptable to the indemnified party in connection with conducting the defense or handling of such Third Party Claim, and Mr. Jain shall defend or handle the same in consultation with the indemnified party, and shall keep the indemnified party timely apprised of the status of such Third Party Claim, and shall not, without the prior written consent of the indemnified party, directly or indirectly assume any position or take any action that would impose any obligation of any kind on or restrict the actions of the indemnified party. Mr. Jain shall not, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, agree to a settlement of any Third Party Claim that could directly or indirectly lead to liability or create any financial or other obligation on the part of the indemnified party for which the indemnified party is not entitled to indemnification hereunder. The indemnified party shall cooperate with Mr. Jain and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense. Notwithstanding the foregoing, in the event Mr. Jain fails to conduct the defense or handling of any Third Party Claim in good faith after having assumed such defense or handling, then the provisions of Section 3(c)(ii) below shall govern.

(c)    (i)    If Mr. Jain does not give written notice to the indemnified party, within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, of Mr. Jain's election to assume the defense or handling of such Third Party Claim, the provisions of Section 3(c)(ii) below shall govern. (ii) The indemnified party may~~, at Mr. Jain's expense,~~ select counsel in connection with conducting the defense or handling of such Third Party Claim and defend or handle such Third Party Claim in such manner as it may deem appropriate, provided, however, that the indemnified party shall keep Mr. Jain timely apprised of the status of such Third Party Claim. If the indemnified party defends or handles such Third Party Claim, Mr. Jain shall cooperate with the indemnified party and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense. <u>If the indemnified party is not the prevailing party in such Third Party Claim, then Mr. Jain shall pay all reasonable fees and expenses of counsel incurred by the indemnified party in connection with the defense and handling of such Third Party Claim. In the event such Third Party Claim is settled by the</u>

indemnified party, Mr. Jain shall pay the fees and expenses of counsel incurred by the indemnified party but only if the amount of such settlement is over $50,000.

(d)     If the indemnified party intends to seek indemnification hereunder, other than for a Third Party Claim, then it shall notify Mr. Jain in writing within six months after its discovery of facts upon which it intends to base its Claim for indemnification hereunder, but the failure or delay so to notify Mr. Jain shall not relieve Mr. Jain of any obligation or liability that Mr. Jain may have to the indemnified party except to the extent that Mr. Jain demonstrates that Mr. Jain's ability to defend or resolve such Claim is adversely affected thereby.

## 4.     Establishment of Escrow Fund

(a)     On the date hereof, Mr. Jain shall deliver to the Escrow Agent certificates representing 1,000,000 shares of the Company's Common Stock (the "*Escrowed Stock*"), along with an assignment separate from such certificate properly endorsed for assignment in blank.  The Escrowed Stock and all cash obtained by the Escrow Agent hereunder shall be referred to as the "*Escrow Fund*".

(b)     Mr. Jain will have all rights to the Escrowed Stock, including, without limitation, the right to vote the Escrowed Stock and the right to receive cash dividends in respect of the Escrowed Stock; provided, however, that, until this Agreement is terminated pursuant to Section 89, the Escrow Agent shall have (i) the right to possess the Escrowed Stock and (ii) the right to receive securities or other property in exchange therefor or in respect thereof or dividends (other than cash dividends) or other distributions thereon or with respect thereto.

(c)     Mr. Jain will have the right to sell the Escrowed Stock, provided that all the proceeds of such sale  remain part of the Escrow Fund and available for payment to an indemnified party pursuant to Section 6 until this Agreement is terminated pursuant to Section 89.  Any such sale shall be made only through a brokers' transaction on the open market for cash consideration.

## 5.     Claims on Escrow Fund

(a)     If the indemnified party shall incur Losses, it shall within ten days of learning of facts giving rise to the claim for Losses deliver to the Escrow Agent and Mr. Jain a certificate (a "*Claim Certificate*") signed by a member of the Board or an officer of the Company stating that one or more members of the Board and/or Company has incurred the Losses specified in such Claim Certificate and setting forth in reasonable detail the facts giving rise to the claim and the basis for the claim.

(b)     Mr. Jain shall have 20 business days after delivery to the Escrow Agent of any Claim Certificate to give to the Escrow Agent and the Board or the Company, as the case may be, written notice of a dispute ("***Dispute Notice***") with respect to such Claim Certificate setting forth in reasonable detail the nature of the dispute.

(c)     If at the end of the 20-day period described in Section 5(b) the Escrow Agent shall not have received a Dispute Notice with respect to any Claim Certificate, such Claim Certificate shall constitute full authority to the Escrow Agent to proceed to pay pursuant to the provisions of Section 6 the Losses specified in such Claim Certificate; provided, however, that, if the Escrow Agent shall have received a Dispute Notice, the Escrow Agent shall not pay any part of the Escrow Fund to the indemnified party until notified of the resolution of the dispute pursuant to the provisions of Section 8.

## 6.     Payment of Claims

The Escrow Agent shall pay a Claim Certificate in cash by selling such number of shares of the Escrowed Stock that shall have a value equal to the amount stated in the Claim Certificate.  In the event that the Claim Certificate states a claim payable in the Company's Common Stock, the Escrow Agent shall pay such claim by transferring, delivering and assigning to the Board or the Company, as the case may be, such number of shares of the Escrowed Stock stated in the Claim Certificate.(rounded to the net highest whole share) that, when valued as set forth in Section 7, shall have a value equal to the amount required to make or complete such payment; provided, however, that the Board or the Company, as the case may be, shall immediately pay in cash to the Escrow Fund any amounts in excess of the Claim Certificate that may occur due to the requirement that only whole shares of the Escrowed Stock may be transferred.

## 7.     Valuation

The Escrowed Stock shall be valued as follows:  at (a) the average of the closing prices for the Escrowed Stock on any national securities exchange on which such stock is listed (or, if listed on more than one such exchange, then on the one located in New York); (b) the average of the closing prices reported on the Nasdaq National Market; (c) the average of the bid and asked prices reported on the Nasdaq Stock Market;  (d) or the average of the bid and asked prices appearing on the "pink sheets" of the National Quotation Bureau, Inc.  All averages shall be computed for the 30 trading days immediately preceding the date of the Claim Certificate.

## <u>7</u>8.   Dispute Resolution

Any dispute with respect to any Claim Certificate or any other provision of this Agreement shall be resolved as follows:

(a)   The disputing parties shall first attempt to settle the dispute.  Any settlement shall be reflected in writing and delivered to the Escrow Agent. The Escrow Agent shall act according to such written settlement agreement.

(b)   If within 30 days of when the Dispute Notice was delivered to the Escrow Agent the disputing parties have not arrived at a settlement agreement, the dispute shall be submitted to arbitration as follows:

(i)   the Board shall select one arbitrator, Mr. Jain shall select one arbitrator (who shall be acceptable to holders of a majority of the Escrowed Stock), and the Board and Mr. Jain together shall select a third arbitrator;

(ii)   The arbitration shall then be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association;

(iii)   Judgment may be rendered upon the award determined by the arbitrators in any court having jurisdiction thereof;

(iv)   Should an injunction be sought, the amount of any bond required shall not exceed $500; and

(v)   Within ten days of receiving notice of an arbitration award, unless restrained by court order, the Escrow Agent shall act according to the mandate of such arbitration award.

## <u>8</u>9.   Termination

(a)   The escrow provided for herein shall terminate five years after the date hereof (the "*Termination Date*")

(b)   Notwithstanding the provisions of (a) and (c) of this Section <u>8</u>9, if the Board or the Company shall in good faith, prior to the Termination Date, have filed with the Escrow Agent and Mr. Jain a certificate signed by a member of the Board or an officer of the Company to the effect that an item of Losses (the maximum amount of which shall be specified in good faith in such certificate) has been incurred by or asserted against the Board or the Company, in respect of the settlement or discharge of which the Board or the Company would be entitled to receive a payment under this Agreement, and that the existence or the amount of such Losses remains

undetermined, then the Escrow Agent shall withhold from distribution that would otherwise be made pursuant to Section 89(c) a number of shares of Escrowed Stock that, when valued as provided in Section 7, shall have a value equal to the maximum amount of such item of Losses as set forth in such certificate, and shall distribute the remainder of the Escrow Fund deliverable under Section 89(c) to Mr. Jain.

(c)     Upon the termination of the escrow as aforesaid, the Escrow Agent shall disburse and Mr. Jain shall be entitled to receive that portion of the Escrow Fund as to which the escrow shall have so terminated.  Any delivery of shares of Escrowed Stock pursuant to this Section 89(c) shall be of full shares, and the Escrow Agent shall sell the number of shares of Escrowed Stock that shall equal the aggregate of all fractions to which Mr. Jain would otherwise be entitled. Promptly after the resolution of any item of Losses that was asserted but not resolved by the Termination Date, the Escrow Agent shall deliver to the Board or the Company, as the case may be, such portion of the Escrow Fund to which it is entitled and shall deliver the balance of the Escrow Fund to Mr. Jain.

## 910.   Notices

Unless written designation of a different address is filed with each of the other parties hereto, all notices required to be given under this Agreement shall be deemed to have been properly given if mailed by registered mail, addressed as follows:

the Board or the Company:

> Mr. John E. Cunningham IV
> 5303 54th Avenue N.E.
> Seattle, WA  98105
> Fax: (206) 528-5668

with a copy to:

> Perkins Coie LLP
> 1201 Third Ave., 40th Floor
> Seattle, WA 98101-3099
> Fax:  (206) 583-8500
> Attention:  Stephen Graham

Naveen Jain:

> InfoSpace.com, Inc.
> 15375 N.E. 90th Street
> Redmond, WA  98052
> Fax:  (425) 882-0988

with a copy to:

> Bruce Robertson
> Garvey, Schubert & Bayer
> 1191 Second Avenue
> Seattle, WA  98101
> (206) 464-0125

~~Escrow Agent:~~

10~~1~~. **Duties and Liability of Escrow Agent**

The Escrow Agent may act on any instrument or other writing believed by the Escrow Agent to be genuine and to be signed or presented by the proper person and shall not be liable in connection with the performance by the Escrow Agent of its duties pursuant to the provisions of this Agreement, except for its own willful default or gross negligence. The Escrow Agent shall be, and hereby is, jointly and severally indemnified and saved harmless, by the parties hereto, from all losses, costs and expenses that may be incurred by it as a result of its involvement in any litigation arising from performance of its duties hereunder, provided that such litigation shall not result from any action taken or omitted by the Escrow Agent and for which it shall have been adjudged negligent.

1~~2~~1. **Successors**

This Agreement and all action taken hereunder in accordance with its terms shall be binding on and inure to the benefit of the Board, the Company and the Escrow Agent and their respective successors and assigns, and Mr. Jain and their respective successors, assigns, heirs, executors, administrators and legal representatives.

12~~3~~. **Substitution of Escrow Agent**

The Escrow Agent, or any successor to it hereafter appointed, may at any time resign by giving notice in writing to the Board, the Company and Mr. Jain and shall be discharged of its duties hereunder upon the appointment of a successor Escrow Agent as hereinafter provided.  In the event of any such resignation, a successor Escrow Agent, who shall be a shall be appointed by the Board.  Any such successor Escrow Agent shall deliver to the Board, the Company and Mr. Jain a written instrument accepting such appointment hereunder, and thereupon it shall succeed to all the rights and duties of the Escrow Agent hereunder.

1~~3~~4. **Appointment of Escrow Agent**

~~T~~the Board, the Company and Mr. Jain hereby appoint —————————the Company as the Escrow Agent to serve in accordance with the terms of this Agreement for the period beginning on the date hereof and ending six months from the date hereof, during which period the Company, the Board and Mr. Jain shall conduct a good faith search to find a successor Escrow Agent that is mutually agreeable to all the parties. ~~, and~~ The Company————————— hereby agrees to act as Escrow Agent under this Agreement.

**145.   Fee of Escrow Agent**

The Company shall pay the fees of the Escrow Agent serving under this Agreement.

**156.   Entire Agreement**

This Agreement is the entire agreement of the parties regarding its subject matter and supersedes all prior written or oral communications or agreements.

**167.   Severability**

The provisions of this Agreement shall be severable.  If this Agreement or any portion shall be invalidated on any ground by any court of competent jurisdiction, then the remainder of this Agreement shall not be affected thereby and shall be given full force and effect and remain binding upon the parties.

**178.   Governing Law**

This Agreement and the rights and obligations of the parties shall be governed by and construed in accordance with the laws of the state of Washington, without giving effect to principles of conflicts of law.

**189.   Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

**1920.   Amendments; Waivers; Addition of New Board Members**

(a)      Neither this Agreement nor any provision may be amended except by written agreement signed by the parties.  No waiver of any breach or default shall be considered valid unless in writing, and no such waiver shall be deemed a waiver of any subsequent breach or default.

(b)      Notwithstanding the foregoing, this Agreement shall be deemed automatically amended to include as a  party and a member of the Board each additional director elected or appointed to the Company's board of directors.

**2<u>0</u>1.** **Successors and Assigns**

This Agreement shall be binding upon Mr. Jain and his successors and assigns, and inure to the benefit of the Board and the Company and their heirs, legal representatives and assigns.

(Signature page follows)

INDEMNIFICATION AGREEMENT

[/SB983440.DOCSB983440.314SB983420.331]     -11-                    ERROR! REFERENCE SOURCE NOT FOUND.

6/20/0312/11/9812/10/98

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

INFOSPACE.COM, INC.

_____

By:
Title:

NAVEEN JAIN

_____

THE BOARD:

PETER CURRIE

_____

GARY LIST

_____

CARL STORK

_____

JOHN E. CUNNINGHAM, IV.

_____

BERNEE D. L. STROM

_____

RUFUS W. LUMRY

_____

# EXHIBIT 3

## Indemnification Agreement

This Indemnification Agreement (this "***Agreement***") dated as of December 11—, 1998 is made between Naveen Jain ("***Mr. Jain***"), InfoSpace.com, Inc., a Delaware corporation (the "***Company***") and all the current and future members of the Company's board of directors (excluding Mr. Jain) (the "***Board***"). Collectively, the Company and the members of the Board shall be referred to herein as the "***indemnified parties***".

## RECITAL

To induce the Company's current and future directors to accept the position of, or to continue to serve as, directors of the Company, Mr. Jain has agreed to indemnify the Board and the Company against certain losses.

## AGREEMENT

## 1<u>1</u>.   Indemnification of the Company and the Board

(a)      Mr. Jain agrees to hold harmless and indemnify the Company and the Board from and against all losses, liabilities, damages or expenses incurred by the Company or the Board that result from any obligation or liability arising out of or in connection with each of the following (collectively, the "**Losses**"):

     (i)      the hiring or termination of any employee or consultant of the Company on or before September 30, 1998;

     (ii)      any commercial contract of the Company entered into on or before September 30, 1998 (including but not limited to contracts with vendors, suppliers, content providers, affiliates, licensees and licensors); <u>provided, however, that this Section shall not apply to any ordinary-course-of-business dispute arising out of any written commerical contract that was disclosed in the corporate records delivered to the Company's general outside counsel prior to September 30, 1998, unless such dispute relates to the oral modification or termination of such commercial contract;</u>

     (iii)      the issuance of the Company's common stock ("***Shares***") or options to acquire Shares as the result of claims or potential claims not known to the Board prior to September 30, 1998,

except for such issuance's involving, in the aggregate, 20,000 or fewer Shares;

(iv)    the issuance of Shares or options to acquire Shares as the result of claims or potential claims, known to the Board on September 30, 1998, to the extent any such issuance in the aggregate involves the issuance of more than 500,000 shares;

(v)    any act of fraud by Mr. Jain occurring on or before September 30, 1998; and

(vi)    any claim, or potential claim, known to Mr. Jain on the date of this Agreement and not disclosed to the Board on or prior to the date of this Agreement.

(b)    Notwithstanding the foregoing, the indemnification provided hereby shall be unavailable for any obligation or liability of the Company (other than any obligation or liability set forth in sSection 1-(a)-(iv) above) (i) that is specifically reflected or reserved against in the Company's financial statements for the fiscal years ended 1996, 1997 and the nine-month period ended September 30, 1998, or (ii) that waswere disclosed in the corporate records delivered to the Company's general outside counsel prior to September 30, 1998.

## 2.    Limitations

(a)    Claims for indemnification made under this Agreement may be made only during the period from the date hereof until five years after the date hereof.

(b)    No indemnified party shall be entitled to receive any indemnification payment with respect to claims for indemnification made under Section 1, until aggregate Losses that all indemnified parties would be otherwise entitled to receive as indemnification exceed $100,000 (the "**Threshold**"); provided, however, that once such aggregate Losses exceed the Threshold, such party shall be entitled to receive indemnification payment for the aggregate Losses that they would be entitled to receive without regard to the Threshold.

(c)    The maximum aggregate amount that the indemnified partiesy shall be entitled to under Section 1 is the Escrowed Stock (as defined below).

## 3. Procedure

(a)     Any indemnified party hereto seeking indemnification hereunder shall notify Mr. Jain in writing reasonably promptly after the assertion against the indemnified party of any claim by a third party or a derivative claim (a "***Third-Party Claim***") in respect of which the indemnified party intends to base a claim for indemnification hereunder, but the failure or delay to so notify Mr. Jain shall not relieve him~it~ of any obligation or liability that he~it~ may have to the indemnified party except to the extent that Mr. Jain demonstrates that his~its~ ability to defend or resolve such Third Party Claim is adversely affected thereby.

(b)     (i)     Mr. Jain shall have the right, upon written notice given to the indemnified party within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, to assume the defense or handling of such Third Party Claim, at Mr. Jain's sole expense, in which case the provisions of Section 3(b)(ii) below shall govern. (ii) Mr. Jain shall select counsel reasonably acceptable to the indemnified party in connection with conducting the defense or handling of such Third Party Claim, and Mr. Jain shall defend or handle the same in consultation with the indemnified party, and shall keep the indemnified party timely apprised of the status of such Third Party Claim, and shall not, without the prior written consent of the indemnified party, directly or indirectly assume any position or take any action that would impose any obligation of any kind on or restrict the actions of the indemnified party. Mr. Jain shall not, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, agree to a settlement of any Third Party Claim that could directly or indirectly lead to liability or create any financial or other obligation on the part of the indemnified party for which the indemnified party is not entitled to indemnification hereunder. The indemnified party shall cooperate with Mr. Jain and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense. Notwithstanding the foregoing, in the event Mr. Jain fails to conduct the defense or handling of any Third Party Claim in good faith after having assumed such defense or handling, then the provisions of Section 3(c)(ii) below shall govern.

(c)     (i)     If Mr. Jain does not give written notice to the indemnified party, within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, of Mr. Jain's election to assume the defense or handling of such Third Party Claim, the provisions of Section 3(c)(ii) below shall govern. (ii) The indemnified party may select counsel in connection with conducting the defense or handling of such Third Party Claim and defend or handle such Third Party Claim in such manner as it may deem appropriate, provided, however, that the indemnified party shall keep Mr. Jain timely apprised of the status of such Third Party Claim. If

the indemnified party defends or handles such Third Party Claim, Mr. Jain shall cooperate with the indemnified party and shall be entitled to participate in the defense or handling of such Third Party Claim with his~~its~~ own counsel and at his~~its~~ own expense. If the indemnified party is not the prevailing party in such Third Party Claim, then Mr. Jain shall pay all reasonable fees and expenses of counsel incurred by the indemnified party in connection with the defense and handling of such Third Party Claim. In the event such Third Party Claim is settled by the indemnified party, Mr. Jain shall pay the fees and expenses of counsel incurred by the indemnified party but only if the amount of such settlement is over $50,000.

(d)     If the indemnified party intends to seek indemnification hereunder, other than for a Third Party Claim, then it shall notify Mr. Jain in writing within six months after its discovery of facts upon which it intends to base its Claim for indemnification hereunder, but the failure or delay so to notify Mr. Jain shall not relieve Mr. Jain of any obligation or liability that Mr. Jain may have to the indemnified party except to the extent that Mr. Jain demonstrates that Mr. Jain's ability to defend or resolve such Claim is adversely affected thereby.

**4.     Establishment of Escrow Fund**

(a)     On the date hereof, Mr. Jain shall deliver to the Escrow Agent certificates representing 1,000,000 shares of the Company's Common Stock (the "*Escrowed Stock*"), along with an assignment separate from such certificate properly endorsed for assignment in blank.  The Escrowed Stock and all cash obtained by the Escrow Agent hereunder shall be referred to as the "*Escrow Fund*".

(b)     Mr. Jain will have all rights to the Escrowed Stock, including, without limitation, the right to vote the Escrowed Stock and the right to receive cash dividends in respect of the Escrowed Stock; provided, however, that, until this Agreement is terminated pursuant to Section 8, the Escrow Agent shall have (i) the right to possess the Escrowed Stock and (ii) the right to receive securities or other property in exchange therefor or in respect thereof or dividends (other than cash dividends) or other distributions thereon or with respect thereto.

(c)     Mr. Jain will have the right to sell the Escrowed Stock, provided that all the proceeds of such sale  remain part of the Escrow Fund and available for payment to an indemnified party pursuant to Section 6 until this Agreement is terminated pursuant to Section 8.  Any such sale shall be made only through a brokers' transaction on the open market for cash consideration.  Mr. Jain shall be entitled to invest the proceeds of such sale in a manner consistent with the Company's investment policy as established by the Board, and to the extent that the face amount

of such investment plus accrued interest exceeds the consideration received for the
Escrowed Stock sold by Mr. Jain, such excess funds may be withdrawn by Mr. Jain.

## 5.      Claims on Escrow Fund

(a)      If the indemnified party shall incur Losses, it shall within ten days of
learning of facts giving rise to the claim for Losses deliver to the Escrow Agent and
Mr. Jain a certificate (a "***Claim Certificate***") signed by a member of the Board or an
officer of the Company stating that one or more members of the Board and/or
Company has incurred the Losses specified in such Claim Certificate and setting forth
in reasonable detail the facts giving rise to the claim and the basis for the claim.

(b)      Mr. Jain shall have 20 business days after delivery to the Escrow Agent
of any Claim Certificate to give to the Escrow Agent and the Board or the Company,
as the case may be, written notice of a dispute ("***Dispute Notice***") with respect to such
Claim Certificate setting forth in reasonable detail the nature of the dispute.

(c)      If at the end of the 20-day period described in Section 5(b) the Escrow
Agent shall not have received a Dispute Notice with respect to any Claim Certificate,
such Claim Certificate shall constitute full authority to the Escrow Agent to proceed to
pay pursuant to the provisions of Section 6 the Losses specified in such Claim
Certificate; provided, however, that, if the Escrow Agent shall have received a
Dispute Notice, the Escrow Agent shall not pay any part of the Escrow Fund to the
indemnified party until notified of the resolution of the dispute pursuant to the
provisions of Section 8.

## 6.      Payment of Claims

The Escrow Agent shall pay a Claim Certificate in cash by selling such number
of shares of the Escrowed Stock that shall have a value equal to the amount stated in
the Claim Certificate.  In the event that the Claim Certificate states a claim payable in
the Company's Common Stock, the Escrow Agent shall pay such claim by
transferring, delivering and assigning to the Board or the Company, as the case may
be, such number of shares of the Escrowed Stock stated in the Claim Certificate.

## 7.      Dispute Resolution

Any dispute with respect to any Claim Certificate or any other provision of this
Agreement shall be resolved as follows:

(a)     The disputing parties shall first attempt to settle the dispute.  Any settlement shall be reflected in writing and delivered to the Escrow Agent. The Escrow Agent shall act according to such written settlement agreement.

(b)     If within 30 days of when the Dispute Notice was delivered to the Escrow Agent the disputing parties have not arrived at a settlement agreement, the dispute shall be submitted to arbitration as follows:

(i)     the Board shall select one arbitrator, Mr. Jain shall select one arbitrator  and the Board and Mr. Jain together shall select a third arbitrator;

(ii)     The arbitration shall then be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association;

(iii)     Judgment may be rendered upon the award determined by the arbitrators in any court having jurisdiction thereof;

(iv)     Should an injunction be sought, the amount of any bond required shall not exceed $500; and

(v)     Within ten days of receiving notice of an arbitration award, unless restrained by court order, the Escrow Agent shall act according to the mandate of such arbitration award.

## 8.     Termination

(a)     The escrow provided for herein shall terminate five years after the date hereof (the "***Termination Date***")

(b)     Notwithstanding the provisions of (a) and (c) of this Section 8, if the Board or the Company shall in good faith, prior to the Termination Date, have filed with the Escrow Agent and Mr. Jain a certificate signed by a member of the Board  or (on behalf of the entire Board) an officer of the Company to the effect that an item of Losses (the maximum amount of which shall be specified in good faith in such certificate) has been incurred by or asserted against the Board or the Company, in respect of the settlement or discharge of which the Board or the Company would be entitled to receive a payment under this Agreement, and that the existence or the amount of such Losses remains undetermined, then the Escrow Agent shall withhold from distribution that would otherwise be made pursuant to Section 8(c) a number of shares of Escrowed Stock that shall have a value equal to the maximum amount of such item of Losses as set forth in such certificate, and shall distribute the remainder of the Escrow Fund deliverable under Section 8(c) to Mr. Jain.

(c)     Upon the termination of the escrow as aforesaid, the Escrow Agent shall disburse and Mr. Jain shall be entitled to receive that portion of the Escrow Fund as to which the escrow shall have so terminated.  Any delivery of shares of Escrowed Stock pursuant to this Section 8(c) shall be of full shares, and the Escrow Agent shall sell the number of shares of Escrowed Stock that shall equal the aggregate of all fractions to which Mr. Jain would otherwise be entitled. Promptly after the resolution of any item of Losses that was asserted but not resolved by the Termination Date, the Escrow Agent shall deliver to the Board or the Company, as the case may be, such portion of the Escrow Fund to which it is entitled and shall deliver the balance of the Escrow Fund to Mr. Jain.

## 9.     Notices

Unless written designation of a different address is filed with each of the other parties hereto, all notices required to be given under this Agreement shall be deemed to have been properly given if mailed by registered mail, addressed as follows:

the Board or the Company:

> Mr. John E. Cunningham IV
> c/o Perkins Coie LLP
> 1201 Third Avenue, 40th Floor
> Seattle, WA  98101-3099
> Fax: (206) 583-8500
> Attention: Stephen Graham
> ~~5303 54th Avenue N.E.~~
> ~~Seattle, WA  98105~~
> ~~Fax: (206) 528-5668~~

with a copy to:

> Perkins Coie LLP
> 1201 Third Ave., 40th Floor
> Seattle, WA 98101-3099
> Fax:  (206) 583-8500
> Attention:  Stephen Graham

Naveen Jain:

> InfoSpace.com, Inc.
> 15375 N.E. 90th Street
> Redmond, WA  98052
> Fax:  (425) 882-0988

with a copy to:

> Bruce Robertson
> Garvey, Schubert & Bar~~eryer~~
> 1191 Second Avenue
> Seattle, WA  98101
> (206) 464-0125

## 10.   Duties and Liability of Escrow Agent

The Escrow Agent may act on any instrument or other writing believed by the Escrow Agent to be genuine and to be signed or presented by the proper person and shall not be liable in connection with the performance by the Escrow Agent of its duties pursuant to the provisions of this Agreement, except for its own willful default or gross negligence. The Escrow Agent shall be, and hereby is, jointly and severally indemnified and saved harmless, by the parties hereto, from all losses, costs and expenses that may be incurred by it as a result of its involvement in any litigation arising from performance of its duties hereunder, provided that such litigation shall not result from any action taken or omitted by the Escrow Agent and for which it shall have been adjudged negligent.

## 11.   Successors

This Agreement and all action taken hereunder in accordance with its terms shall be binding on and inure to the benefit of the Board, the Company and the Escrow Agent and their respective successors and assigns, and Mr. Jain and their respective successors, assigns, heirs, executors, administrators and legal representatives.

## 12.   Substitution of Escrow Agent

The Escrow Agent, or any successor to it hereafter appointed, may at any time resign by giving notice in writing to the Board, the Company and Mr. Jain and shall be discharged of its duties hereunder upon the appointment of a successor Escrow Agent as hereinafter provided. In the event of any such resignation, a successor Escrow Agent, who shall be a shall be appointed by the Board. Any such successor Escrow Agent shall deliver to the Board, the Company and Mr. Jain a written instrument accepting such appointment hereunder, and thereupon it shall succeed to all the rights and duties of the Escrow Agent hereunder.

## 13.   Appointment of Escrow Agent

The Board, the Company and Mr. Jain hereby appoint the Company as the Escrow Agent to serve in accordance with the terms of this Agreement for the period beginning on the date hereof and ending six months from the date hereof, during which period the Company, the Board and Mr. Jain shall conduct a good faith search to find a successor Escrow Agent that is mutually agreeable to all the parties. The Company hereby agrees to act as Escrow Agent under this Agreement.

## 14.    Fee of Escrow Agent

The Company shall pay the fees of the Escrow Agent serving under this Agreement, if any.

## 15.    Entire Agreement

This Agreement is the entire agreement of the parties regarding its subject matter and supersedes all prior written or oral communications or agreements.

## 16.    Severability

The provisions of this Agreement shall be severable.  If this Agreement or any portion shall be invalidated on any ground by any court of competent jurisdiction, then the remainder of this Agreement shall not be affected thereby and shall be given full force and effect and remain binding upon the parties.

## 17.    Governing Law

This Agreement and the rights and obligations of the parties shall be governed by and construed in accordance with the laws of the state of Washington, without giving effect to principles of conflicts of law.

## 18.    Counterparts

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

## 19.    Amendments; Waivers; Addition of New Board Members

(a)    Neither this Agreement nor any provision may be amended except by written agreement signed by the parties.  No waiver of any breach or default shall be considered valid unless in writing, and no such waiver shall be deemed a waiver of any subsequent breach or default.

(b)    Notwithstanding the foregoing, this Agreement shall be deemed automatically amended to include as a  party and a member of the Board each additional director elected or appointed to the Company's board of directors.

**20.    Successors and Assigns**

This Agreement shall be binding upon Mr. Jain and his successors and assigns, and inure to the benefit of the Board and the Company and their heirs, legal representatives and assigns.

(Signature page follows)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

INFOSPACE.COM, INC.

_____

By:
Title:


NAVEEN JAIN


_____


THE BOARD:

PETER CURRIE


_____


GARY LIST


_____


CARL STORK


_____

JOHN E. CUNNINGHAM, IV.

_____

BERNEE D. L. STROM

_____

RUFUS W. LUMRY

_____

# EXHIBIT 4

## Indemnification Agreement

This Indemnification Agreement (this "*Agreement*") dated as of December 11, 1998 is made between Naveen Jain ("*Mr. Jain*"), InfoSpace.com, Inc., a Delaware corporation (the "*Company*") and all the current and future members of the Company's board of directors (excluding Mr. Jain) (the "*Board*"). Collectively, the Company and the members of the Board shall be referred to herein as the "*indemnified parties*".

## RECITAL

To induce the Company's current and future directors to accept the position of, or to continue to serve as, directors of the Company, Mr. Jain has agreed to indemnify the Board and the Company against certain losses.

## AGREEMENT

### 1. Indemnification of the Company and the Board

(a)     Mr. Jain agrees to hold harmless and indemnify the Company and the Board from and against all losses, liabilities, damages or expenses incurred by the Company or the Board that result from any obligation or liability arising out of or in connection with each of the following (collectively, the "**Losses**"):

   (i)     the hiring or termination of any employee or consultant of the Company on or before September 30, 1998;

   (ii)    any commercial contract of the Company entered into on or before September 30, 1998 (including but not limited to contracts with vendors, suppliers, content providers, affiliates, licensees and licensors); provided, however, that this Section shall not apply to any ordinary-course-of-business dispute arising out of any written commerical contract that was disclosed in the corporate records delivered to the Company's general outside counsel prior to September 30, 1998, unless such dispute relates to the oral modification or termination of such commercial contract;

   (iii)   the issuance of the Company's common stock ("*Shares*") or options to acquire Shares as the result of claims or potential claims not known to the Board prior to September 30, 1998,

except for such issuances involving, in the aggregate, 20,000 or fewer Shares;

(iv)    the issuance of Shares or options to acquire Shares as the result of claims or potential claims, known to the Board on September 30, 1998, to the extent any such issuance in the aggregate involves the issuance of more than 500,000 shares;

(v)    any act of fraud by Mr. Jain occurring on or before September 30, 1998; and

(vi)    any claim, or potential claim, known to Mr. Jain on the date of this Agreement and not disclosed to the Board on or prior to the date of this Agreement.

(b)    Notwithstanding the foregoing, the indemnification provided hereby shall be unavailable for any obligation or liability of the Company (other than any obligation or liability set forth in Section 1(a)(iv) above) (i) that is specifically reflected or reserved against in the Company's financial statements for the fiscal years ended 1996, 1997 and the nine-month period ended September 30, 1998, or (ii) that was disclosed in the corporate records delivered to the Company's general outside counsel prior to September 30, 1998.

## 2.    Limitations

(a)    Claims for indemnification made under this Agreement may be made only during the period from the date hereof until five years after the date hereof.

(b)    No indemnified party shall be entitled to receive any indemnification payment with respect to claims for indemnification made under Section 1, until aggregate Losses that all indemnified parties would be otherwise entitled to receive as indemnification exceed $100,000 (the "*Threshold*"); provided, however, that once such aggregate Losses exceed the Threshold, such party shall be entitled to receive indemnification payment for the aggregate Losses that they would be entitled to receive without regard to the Threshold.

(c)    The maximum aggregate amount that the indemnified parties shall be entitled to under Section 1 is the Escrowed ~~Stock~~ Fund (as defined below).

3.    **Procedure**

(a)    Any indemnified party hereto seeking indemnification hereunder shall notify Mr. Jain in writing reasonably promptly after the assertion against the indemnified party of any claim by a third party or a derivative claim (a "***Third-Party Claim***") in respect of which the indemnified party intends to base a claim for indemnification hereunder, but the failure or delay to so notify Mr. Jain shall not relieve himof any obligation or liability that hemay have to the indemnified party except to the extent that Mr. Jain demonstrates that his ability to defend or resolve such Third Party Claim is adversely affected thereby.

(b)    (i)    Mr. Jain shall have the right, upon written notice given to the indemnified party within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, to assume the defense or handling of such Third Party Claim, at Mr. Jain's sole expense, in which case the provisions of Section 3(b)(ii) below shall govern. (ii) Mr. Jain shall select counsel reasonably acceptable to the indemnified party in connection with conducting the defense or handling of such Third Party Claim, and Mr. Jain shall defend or handle the same in consultation with the indemnified party, and shall keep the indemnified party timely apprised of the status of such Third Party Claim, and shall not, without the prior written consent of the indemnified party, directly or indirectly assume any position or take any action that would impose any obligation of any kind on or restrict the actions of the indemnified party. Mr. Jain shall not, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, agree to a settlement of any Third Party Claim that could directly or indirectly lead to liability or create any financial or other obligation on the part of the indemnified party for which the indemnified party is not entitled to indemnification hereunder. The indemnified party shall cooperate with Mr. Jain and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense. Notwithstanding the foregoing, in the event Mr. Jain fails to conduct the defense or handling of any Third Party Claim in good faith after having assumed such defense or handling, then the provisions of Section 3(c)(ii) below shall govern.

(c)    (i)    If Mr. Jain does not give written notice to the indemnified party, within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, of Mr. Jain's election to assume the defense or handling of such Third Party Claim, the provisions of Section 3(c)(ii) below shall govern. (ii) The indemnified party may select counsel in connection with conducting the defense or handling of such Third Party Claim and defend or handle such Third Party Claim in such manner as it may deem appropriate, provided, however, that the indemnified party shall keep Mr. Jain timely apprised of the status of such Third Party Claim. If

the indemnified party defends or handles such Third Party Claim, Mr. Jain shall cooperate with the indemnified party and shall be entitled to participate in the defense or handling of such Third Party Claim with his own counsel and at his own expense. If the indemnified party is not the prevailing party in such Third Party Claim, then Mr. Jain shall pay all reasonable fees and expenses of counsel incurred by the indemnified party in connection with the defense and handling of such Third Party Claim. In the event such Third Party Claim is settled by the indemnified party, Mr. Jain shall pay the fees and expenses of counsel incurred by the indemnified party but only if the amount of such settlement is over $50,000.

(d)     If the indemnified party intends to seek indemnification hereunder, other than for a Third Party Claim, then it shall notify Mr. Jain in writing within six months after its discovery of facts upon which it intends to base its Claim for indemnification hereunder, but the failure or delay so to notify Mr. Jain shall not relieve Mr. Jain of any obligation or liability that Mr. Jain may have to the indemnified party except to the extent that Mr. Jain demonstrates that Mr. Jain's ability to defend or resolve such Claim is adversely affected thereby.

**4.     Establishment of Escrow Fund**

(a)     On the date hereof, Mr. Jain shall deliver to the Escrow Agent certificates representing 1,000,000 shares of the Company's Common Stock (the "*Escrowed Stock*"), along with an assignment separate from such certificate properly endorsed for assignment in blank. The Escrowed Stock and all cash or proceeds obtained by the Escrow Agent hereunder (including, without limitation, proceeds from the sale of the Escrowed Stock by the Escrow Agent or Mr. Jain under Section 4(c) hereof) shall be referred to as the "*Escrow Fund*".

(b)     Mr. Jain will have all rights to the Escrowed Stock, including, without limitation, the right to vote the Escrowed Stock and the right to receive cash dividends in respect of the Escrowed Stock; provided, however, that, until this Agreement is terminated pursuant to Section 8, the Escrow Agent shall have (i) the right to possess the Escrowed Stock and (ii) the right to receive securities or other property in exchange therefor or in respect thereof or dividends (other than cash dividends) or other distributions thereon or with respect thereto.

(c)     Mr. Jain will have the right to sell the Escrowed Stock, provided that all the proceeds of such sale remain part of the Escrow Fund and available for payment to an indemnified party pursuant to Section 6 until this Agreement is terminated pursuant to Section 8. Any such sale shall be made only through a brokers' transaction on the open market for cash consideration. Mr. Jain shall be entitled to

invest the proceeds of such sale in a manner consistent with the Company's investment policy as established by the Board, and to the extent that the face amount of such investment plus accrued interest exceeds the consideration received for the Escrowed Stock sold by Mr. Jain, such excess funds may be withdrawn by Mr. Jain.

## 5.   Claims on Escrow Fund

(a)   If the indemnified party shall incur Losses, it shall within ten days of learning of facts giving rise to the claim for Losses deliver to the Escrow Agent and Mr. Jain a certificate (a "**Claim Certificate**") signed by a member of the Board or an officer of the Company stating that one or more members of the Board and/or Company has incurred the Losses specified in such Claim Certificate and setting forth in reasonable detail the facts giving rise to the claim and the basis for the claim.

(b)   Mr. Jain shall have 20 business days after delivery to the Escrow Agent of any Claim Certificate to give to the Escrow Agent and the Board or the Company, as the case may be, written notice of a dispute ("**Dispute Notice**") with respect to such Claim Certificate setting forth in reasonable detail the nature of the dispute.

(c)   If at the end of the 20-day period described in Section 5(b) the Escrow Agent shall not have received a Dispute Notice with respect to any Claim Certificate, such Claim Certificate shall constitute full authority to the Escrow Agent to proceed to pay pursuant to the provisions of Section 6 the Losses specified in such Claim Certificate; provided, however, that, if the Escrow Agent shall have received a Dispute Notice, the Escrow Agent shall not pay any part of the Escrow Fund to the indemnified party until notified of the resolution of the dispute pursuant to the provisions of Section 8.

## 6.   Payment of Claims

The Escrow Agent shall pay a Claim Certificate in cash or by selling such number of shares of the Escrowed Stock (or any proceeds or investment resulting from the sale of the Escrowed Stock under Section 4(c) hereof) that shall have a value equal to the amount stated in the Claim Certificate. In the event that the Claim Certificate states a claim payable in the Company's Common Stock, the Escrow Agent shall pay such claim by transferring, delivering and assigning to the Board or the Company, as the case may be, such number of shares of the Escrowed Stock stated in the Claim Certificate.

## 7.    Dispute Resolution

Any dispute with respect to any Claim Certificate or any other provision of this Agreement shall be resolved as follows:

(a)    The disputing parties shall first attempt to settle the dispute.  Any settlement shall be reflected in writing and delivered to the Escrow Agent. The Escrow Agent shall act according to such written settlement agreement.

(b)    If within 30 days of when the Dispute Notice was delivered to the Escrow Agent the disputing parties have not arrived at a settlement agreement, the dispute shall be submitted to arbitration as follows:

(i)    the Board shall select one arbitrator, Mr. Jain shall select one arbitrator  and the Board and Mr. Jain together shall select a third arbitrator;

(ii)    The arbitration shall then be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association;

(iii)    Judgment may be rendered upon the award determined by the arbitrators in any court having jurisdiction thereof;

(iv)    Should an injunction be sought, the amount of any bond required shall not exceed $500; and

(v)    Within ten days of receiving notice of an arbitration award, unless restrained by court order, the Escrow Agent shall act according to the mandate of such arbitration award.

## 8.    Termination

(a)    The escrow provided for herein shall terminate five years after the date hereof (the "***Termination Date***")

(b)    Notwithstanding the provisions of (a) and (c) of this Section 8, if the Board or the Company shall in good faith, prior to the Termination Date, have filed with the Escrow Agent and Mr. Jain a certificate signed by a member of the Board (on behalf of the entire Board) to the effect that an item of Losses (the maximum amount of which shall be specified in good faith in such certificate) has been incurred by or asserted against the Board or the Company, in respect of the settlement or discharge of which the Board or the Company would be entitled to receive a payment under this Agreement, and that the existence or the amount of such Losses remains undetermined, then the Escrow Agent shall withhold from distribution that would

otherwise be made pursuant to Section 8(c) a number of shares of Escrowed Stock that shall have a value equal to the maximum amount of such item of Losses as set forth in such certificate, and shall distribute the remainder of the Escrow Fund deliverable under Section 8(c) to Mr. Jain.

(c)     Upon the termination of the escrow as aforesaid, the Escrow Agent shall disburse and Mr. Jain shall be entitled to receive that portion of the Escrow Fund as to which the escrow shall have so terminated.  Any delivery of shares of Escrowed Stock pursuant to this Section 8(c) shall be of full shares, and the Escrow Agent shall sell the number of shares of Escrowed Stock that shall equal the aggregate of all fractions to which Mr. Jain would otherwise be entitled. Promptly after the resolution of any item of Losses that was asserted but not resolved by the Termination Date, the Escrow Agent shall deliver to the Board or the Company, as the case may be, such portion of the Escrow Fund to which it is entitled and shall deliver the balance of the Escrow Fund to Mr. Jain.

## 9.    Notices

Unless written designation of a different address is filed with each of the other parties hereto, all notices required to be given under this Agreement shall be deemed to have been properly given if mailed by registered mail, addressed as follows:

the Board or the Company:

>Mr. John E. Cunningham IV
>c/o Perkins Coie LLP
>1201 Third Avenue, 40th Floor
>Seattle, WA  98101-3099
>Fax: (206) 583-8500
>Attention: Stephen Graham

with a copy to:

>Perkins Coie LLP
>1201 Third Ave., 40th Floor
>Seattle, WA 98101-3099
>Fax:  (206) 583-8500
>Attention:  Stephen Graham

Naveen Jain:

>InfoSpace.com, Inc.
>15375 N.E. 90th Street
>Redmond, WA  98052
>Fax:  (425) 882-0988

with a copy to:

>Bruce Robertson
>Garvey, Schubert & Barer
>1191 Second Avenue
>Seattle, WA  98101
>(206) 464-0125

## 10.    Duties and Liability of Escrow Agent

The Escrow Agent may act on any instrument or other writing believed by the Escrow Agent to be genuine and to be signed or presented by the proper person and shall not be liable in connection with the performance by the Escrow Agent of its

duties pursuant to the provisions of this Agreement, except for its own willful default or gross negligence. The Escrow Agent shall be, and hereby is, jointly and severally indemnified and saved harmless, by the parties hereto, from all losses, costs and expenses that may be incurred by it as a result of its involvement in any litigation arising from performance of its duties hereunder, provided that such litigation shall not result from any action taken or omitted by the Escrow Agent and for which it shall have been adjudged negligent.

## 11.   Successors

This Agreement and all action taken hereunder in accordance with its terms shall be binding on and inure to the benefit of the Board, the Company and the Escrow Agent and their respective successors and assigns, and Mr. Jain and their respective successors, assigns, heirs, executors, administrators and legal representatives.

## 12.   Substitution of Escrow Agent

The Escrow Agent, or any successor to it hereafter appointed, may at any time resign by giving notice in writing to the Board, the Company and Mr. Jain and shall be discharged of its duties hereunder upon the appointment of a successor Escrow Agent as hereinafter provided.  In the event of any such resignation, a successor Escrow Agent, who shall be a shall be appointed by the Board.  Any such successor Escrow Agent shall deliver to the Board, the Company and Mr. Jain a written instrument accepting such appointment hereunder, and thereupon it shall succeed to all the rights and duties of the Escrow Agent hereunder.

## 13.   Appointment of Escrow Agent

The Board, the Company and Mr. Jain hereby appoint the Company as the Escrow Agent to serve in accordance with the terms of this Agreement for the period beginning on the date hereof and ending six months from the date hereof, during which period the Company, the Board and Mr. Jain shall conduct a good faith search to find a successor Escrow Agent that is mutually agreeable to all the parties.  The Company hereby agrees to act as Escrow Agent under this Agreement.

## 14.   Fee of Escrow Agent

The Company shall pay the fees of the Escrow Agent serving under this Agreement, if any.

## 15.    Entire Agreement

This Agreement is the entire agreement of the parties regarding its subject matter and supersedes all prior written or oral communications or agreements.

## 16.    Severability

The provisions of this Agreement shall be severable.  If this Agreement or any portion shall be invalidated on any ground by any court of competent jurisdiction, then the remainder of this Agreement shall not be affected thereby and shall be given full force and effect and remain binding upon the parties.

## 17.    Governing Law

This Agreement and the rights and obligations of the parties shall be governed by and construed in accordance with the laws of the state of Washington, without giving effect to principles of conflicts of law.

## 18.    Counterparts

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

## 19.    Amendments; Waivers; Addition of New Board Members

(a)    Neither this Agreement nor any provision may be amended except by written agreement signed by the parties.  No waiver of any breach or default shall be considered valid unless in writing, and no such waiver shall be deemed a waiver of any subsequent breach or default.

(b)    Notwithstanding the foregoing, this Agreement shall be deemed automatically amended to include as a  party and a member of the Board each additional director elected or appointed to the Company's board of directors.

## 20.    Successors and Assigns

This Agreement shall be binding upon Mr. Jain and his successors and assigns, and inure to the benefit of the Board and the Company and their heirs, legal representatives and assigns.

(Signature page follows)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

INFOSPACE.COM, INC.

_____

By:
Title:


NAVEEN JAIN

_____



THE BOARD:

PETER CURRIE

_____


GARY LIST

_____


CARL STORK

_____

JOHN E. CUNNINGHAM, IV.


_____


BERNEE D. L. STROM


_____


RUFUS W. LUMRY


_____

# EXHIBIT 5

[[1]]FINEDG:[17557.EX10_26]00001.PIP    EDGAR only        EDC: 11-DEC-1998 18:02   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                S-1          R.R. Donnelley    (206) 389-8900        68553 V2.7-5  •••

<PAGE>

EXHIBIT 10.26

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement (this "AGREEMENT") dated as of December 11, 1998 is made between Naveen Jain ("MR. JAIN"), InfoSpace.com, Inc., a Delaware corporation (the "COMPANY") and all the current and future members of the Company's board of directors (excluding Mr. Jain) (the "BOARD"). Collectively, the Company and the members of the Board shall be referred to herein as the "INDEMNIFIED PARTIES".

### RECITAL

To induce the Company's current and future directors to accept the position of, or to continue to serve as, directors of the Company, Mr. Jain has agreed to indemnify the Board and the Company against certain losses.

### AGREEMENT

1.  INDEMNIFICATION OF THE COMPANY AND THE BOARD

(a)  Mr. Jain agrees to hold harmless and indemnify the Company and the Board from and against all losses, liabilities, damages or expenses incurred by the Company or the Board that result from any obligation or liability arising out of or in connection with each of the following (collectively, the "LOSSES"):

  (i)  the hiring or termination of any employee or consultant of the Company on or before September 30, 1998;

  (ii)  any commercial contract of the Company entered into on or before September 30, 1998 (including but not limited to contracts with vendors, suppliers, content providers, affiliates, licensees and licensors); provided, however, that this Section shall not apply to any ordinary-course-of-business dispute arising out of any written commerical contract that was disclosed in the corporate records delivered to the Company's general outside counsel prior to September 30, 1998, unless such dispute relates to the oral modification or termination of such commercial contract;

  (iii)  the issuance of the Company's common stock ("SHARES") or options to acquire Shares as the result of claims or potential claims not known to the Board prior to September 30, 1998.

-1-

ISPK 00001

[[L]]FDXDG:[17557.EX10_26]00002.PIF      EDGAR only          EDC: 14-DEC-1998 14:00   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                 5-1                 R.R. Donnelley    (206) 389-8900     68539  V2.7-5   •••

<PAGE>

except for such issuances involving, in the aggregate, 20,000 or
*fewer Shares;*

(iv)  the issuance of Shares or options to acquire Shares as the
result of claims or potential claims, known to the Board on
September 30, 1998, to the extent any such issuance in the
aggregate involves the issuance of more than 500,000 shares;

(v)   any act of fraud by Mr. Jain occurring on or before
September 30, 1998; and

(vi)  any claim, or potential claim, known to Mr. Jain on the date of
this Agreement and not disclosed to the Board on or prior to the
date of this Agreement.

(b)  Notwithstanding the foregoing, the indemnification provided hereby
shall be unavailable for any obligation or liability of the Company (other than
any obligation or liability set forth in Section 1(a)(iv) above) (i) that is
specifically reflected or reserved against in the Company's financial statements
for the fiscal years ended 1996, 1997 and the nine-month period ended September
30, 1998, or (ii) that was disclosed in the corporate records delivered to the
Company's general outside counsel prior to September 30, 1998.

2.   LIMITATIONS

(a)  Claims for indemnification made under this Agreement may be made only
during the period from the date hereof until five years after the date hereof.

(b)  No indemnified party shall be entitled to receive any indemnification
payment with respect to claims for indemnification made under Section 1, until
aggregate Losses that all indemnified parties would be otherwise entitled to
receive as indemnification exceed $100,000 (the "THRESHOLD"); provided, however,
that once such aggregate Losses exceed the Threshold, such party shall be
entitled to receive indemnification payment for the aggregate Losses that they
would be entitled to receive without regard to the Threshold.

(c)  The maximum aggregate amount that the indemnified parties shall be
entitled to under Section 1 is the Escrow Fund (as defined below).

-2-

ISPK 00002

6/23/2003 10:40 FAX 2066238717

EDG: 11-DEC-1998 17:44   BLK: 00-000-0000 00:00
(206) 389-8900           WF2EDG

EDGAR only   R.R. Donnelley
S-1

[[L]]FINEDG:[17557.EX10_26]00003.PIP
[[l]]InfoSpace.com, Inc.

<PAGE>

3.   PROCEDURE

(a)   Any indemnified party hereto seeking indemnification hereunder shall notify Mr. Jain in writing reasonably promptly after the assertion against the indemnified party of any claim by a third party or a derivative claim (a "THIRD-PARTY CLAIM") in respect of which the indemnified party intends to base a claim for indemnification hereunder, but the failure or delay to so notify Mr. Jain shall not relieve himof any obligation or liability that hemay have to the indemnified party except to the extent that Mr. Jain demonstrates that his ability to defend or resolve such Third Party Claim is adversely affected thereby.

(b)   (i)   Mr. Jain shall have the right, upon written notice given to the indemnified party within 10 days after receipt of the notice from the indemnified party of any Third Party Claim, to assume the defense or handling of such Third Party Claim, at Mr. Jain's sole expense, in which case the provisions of Section 3(b)(ii) below shall govern. (ii) Mr. Jain shall select counsel reasonably acceptable to the indemnified party in connection with conducting the defense or handling of such Third Party Claim, and Mr. Jain shall defend or handle the same in consultation with the indemnified party, and shall keep the indemnified party timely apprised of the status of such Third Party Claim. Mr. Jain shall not, without the prior written consent of the indemnified party, directly or indirectly assume any position or take any action that would impose any obligation of any kind on or restrict the actions of the indemnified party, Mr. Jain shall not, without the prior written consent of the indemnified party, agree to a settlement of any Third Party Claim that could directly or indirectly lead to liability or create any financial or other obligation on the part of the indemnified party for which the indemnified party is not entitled to indemnification hereunder. The indemnified party shall cooperate with Mr. Jain and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense. Notwithstanding the foregoing, in the event Mr. Jain fails to conduct the defense or handling of any Third Party Claim in good faith after having assumed such defense or handling, then the provisions of Section 3(c)(ii) below shall govern.

(c)   (i)   If Mr. Jain does not give written notice to the indemnified party, within 10 days after receipt of the notice from the indemnified party of any Third Party Claim, of Mr. Jain's election to assume the defense or handling of such Third Party Claim, the provisions of Section 3(c)(ii) below shall govern. (ii) The indemnified party may select counsel in connection with conducting the defense or handling of such Third Party Claim and defend or handle such Third Party Claim in such manner as it may deem appropriate, provided, however, that the indemnified

-3-

ISPK 00003

[[1]]FEDEDG:[17557.EX10_26]00004.FIP      EDGAR only         EDC: 14-DEC-1998 14:03   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                  S-1           R.R. Donnelley      (206) 389-8900      68539  V2.7-5 ...

\<PAGE\>

party shall keep Mr. Jain timely apprised of the status of such Third Party
Claim. If the indemnified party defends or handles such Third Party Claim, Mr.
Jain shall cooperate with the indemnified party and shall be entitled to
participate in the defense or handling of such Third Party Claim with his own
counsel and at his own expense. If the indemnified party is not the prevailing
party in such Third Party Claim, then Mr. Jain shall pay all reasonable fees and
expenses of counsel incurred by the indemnified party in connection with the
defense and handling of such Third Party Claim. In the event such Third Party
Claim is settled by the indemnified party, Mr. Jain shall pay the fees and
expenses of counsel incurred by the indemnified party but only if the amount of
such settlement is over $50,000.

          (d)  If the indemnified party intends to seek indemnification hereunder,
other than for a Third Party Claim, then it shall notify Mr. Jain in writing
within six months after its discovery of facts upon which it intends to base its
Claim for indemnification hereunder, but the failure or delay so to notify Mr.
Jain shall not relieve Mr. Jain of any obligation or liability that Mr. Jain may
have to the indemnified party except to the extent that Mr. Jain demonstrates
that Mr. Jain's ability to defend or resolve such Claim is adversely affected
thereby.

4.   ESTABLISHMENT OF ESCROW FUND

          (a)  On the date hereof, Mr. Jain shall deliver to the Escrow Agent
certificates representing 1,000,000 shares of the Company's Common Stock (the
"ESCROWED STOCK"), along with an assignment separate from such certificate
properly endorsed for assignment in blank. The Escrowed Stock and all cash
or proceeds obtained by the Escrow Agent hereunder (including, without
limitation, proceeds from the sale of the Escrowed Stock by the Escrow Agent or
Mr. Jain under Section 4(c) hereof) shall be referred to as the "ESCROW FUND".

          (b)  Mr. Jain will have all rights to the Escrowed Stock, including,
without limitation, the right to vote the Escrowed Stock and the right to
receive cash dividends in respect of the Escrowed Stock; provided, however,
that, until this Agreement is terminated pursuant to Section 8, the Escrow Agent
shall have (i) the right to possess the Escrowed Stock and (ii) the right to
receive securities or other property in exchange therefor or in respect thereof
or dividends (other than cash dividends) or other distributions thereon or with
respect thereto.

          (c)  Mr. Jain will have the right to sell the Escrowed Stock, provided that
all the proceeds of such sale remain part of the Escrow Fund and available for
payment to an indemnified party pursuant to Section 6 until this Agreement is
terminated pursuant to Section 8. Any such sale shall be made only through a
brokers' transaction on the open market for cash consideration. Mr. Jain shall
be entitled to invest the proceeds of such sale in a manner consistent with the
Company's

                                      -4-

ISPK 00004

```
[[1]]FINEDC:[17557.EX10_26]00005.PIP    EDGAR only              EDG: 14-DEC-1998 14:04   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                5-1                     R.R. Donnelley    (206) 389-8900      68539  V2.7-5  ...
```

<PAGE>

investment policy as established by the Board, and to the extent that the face amount of such investment plus accrued interest exceeds the consideration received for the Escrowed Stock sold by Mr. Jain, such excess funds may be withdrawn by Mr. Jain.

5.    CLAIMS ON ESCROW FUND

    (a)  If the indemnified party shall incur Losses, it shall within ten days of learning of facts giving rise to the claim for Losses deliver to the Escrow Agent and Mr. Jain a certificate (a "CLAIM CERTIFICATE") signed by a member of the Board or an officer of the Company stating that one or more members of the Board and/or Company has incurred the Losses specified in such Claim Certificate and setting forth in reasonable detail the facts giving rise to the claim and the basis for the claim.

    (b)  Mr. Jain shall have 20 business days after delivery to the Escrow Agent of any Claim Certificate to give to the Escrow Agent and the Board or the Company, as the case may be, written notice of a dispute ("DISPUTE NOTICE") with respect to such Claim Certificate setting forth in reasonable detail the nature of the dispute.

    (c)  If at the end of the 20-day period described in Section 5(b) the Escrow Agent shall not have received a Dispute Notice with respect to any Claim Certificate, such Claim Certificate shall constitute full authority to the Escrow Agent to proceed to pay pursuant to the provisions of Section 6 the Losses specified in such Claim Certificate; provided, however, that, if the Escrow Agent shall have received a Dispute Notice, the Escrow Agent shall not pay any part of the Escrow Fund to the indemnified party until notified of the resolution of the dispute pursuant to the provisions of Section 8.

6.    PAYMENT OF CLAIMS

    The Escrow Agent shall pay a Claim Certificate in cash or by selling such number of shares of the Escrowed Stock (or any proceeds or investment resulting from the sale of Escrowed Stock under Section 4(c) hereof) that shall have a value equal to the amount stated in the Claim Certificate. In the event that the Claim Certificate states a claim payable in the Company's Common Stock, the Escrow Agent shall pay such claim by transferring, delivering and assigning to the Board or the Company, as the case may be, such number of shares of the Escrowed Stock stated in the Claim Certificate.

7.    DISPUTE RESOLUTION

    Any dispute with respect to any Claim Certificate or any other provision of this Agreement shall be resolved as follows:

-5-

ISPK 00005

[[1]]FIXEDG:[17557.EX10_26]00006.PIP      EDGAR only           EDG: 11-DEC-1998 17:44   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                  S-1            R.R. Donnelley      (206) 389-8900       WP2EDG

<PAGE>

    (a)  The disputing parties shall first attempt to settle the dispute. Any settlement shall be reflected in writing and delivered to the Escrow Agent. The Escrow Agent shall act according to such written settlement agreement.

    (b)  If within 30 days of when the Dispute Notice was delivered to the Escrow Agent the disputing parties have not arrived at a settlement agreement, the dispute shall be submitted to arbitration as follows:

        (i)  the Board shall select one arbitrator, Mr. Jain shall select one arbitrator and the Board and Mr. Jain together shall select a third arbitrator;

        (ii)  The arbitration shall then be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association;

        (iii)  Judgment may be rendered upon the award determined by the arbitrators in any court having jurisdiction thereof;

        (iv)  Should an injunction be sought, the amount of any bond required shall not exceed $500; and

        (v)  Within ten days of receiving notice of an arbitration award, unless restrained by court order, the Escrow Agent shall act according to the mandate of such arbitration award.

8.  TERMINATION

    (a)  The escrow provided for herein shall terminate five years after the date hereof (the "TERMINATION DATE")

    (b)  Notwithstanding the provisions of (a) and (c) of this Section 8, if the Board or the Company shall in good faith, prior to the Termination Date, have filed with the Escrow Agent and Mr. Jain a certificate signed by a member of the Board (on behalf of the entire Board) to the effect that an item of Losses (the maximum amount of which shall be specified in good faith in such certificate) has been incurred by or asserted against the Board or the Company, in respect of the settlement or discharge of which the Board or the Company would be entitled to receive a payment under this Agreement, and that the existence or the amount of such Losses remains undetermined, then the Escrow Agent shall withhold from distribution that would otherwise be made pursuant to Section 8(c) a number of shares of Escrowed Stock that shall have a value equal to the maximum amount of such item of Losses as set forth in such certificate, and shall distribute the remainder of the Escrow Fund deliverable under Section 8(c) to Mr. Jain.

-6-

ISPK 00006

[[1]]FINEDG:[17557.EX10_26]00007.PIP    EDGAR only        EDG: 11-DEC-1998 17:44  BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                S-1               R.R. Donnelley      (206) 389-8900        WP2EDG

<PAGE>

(c)  Upon the termination of the escrow as aforesaid, the Escrow Agent
shall disburse and Mr. Jain shall be entitled to receive that portion of the
Escrow Fund as to which the escrow shall have so terminated. Any delivery of
shares of Escrowed Stock pursuant to this Section 8(c) shall be of full shares,
and the Escrow Agent shall sell the number of shares of Escrowed Stock that
shall equal the aggregate of all fractions to which Mr. Jain would otherwise be
entitled. Promptly after the resolution of any item of Losses that was asserted
but not resolved by the Termination Date, the Escrow Agent shall deliver to the
Board or the Company, as the case may be, such portion of the Escrow Fund to
which it is entitled and shall deliver the balance of the Escrow Fund to Mr.
Jain.

9.   NOTICES

     Unless written designation of a different address is filed with each of the
other parties hereto, all notices required to be given under this Agreement
shall be deemed to have been properly given if mailed by registered mail,
addressed as follows:

-7-

ISPK 00007

[[1]]FINEDG:[17557.EX10_26]00008.FIF      EDGAR only          EDG: 11-DEC-1998 17:44   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                  S-1          R.R. Donnelley    (206) 389-8900      W72EDG

<PAGE>

the Board or the Company:

> Mr. John E. Cunningham IV
> c/o Perkins Coie LLP
> 1201 Third Avenue, 40th Floor
> Seattle, WA 98101-3099
> Fax: (206) 583-8500
> Attention: Stephen Graham

with a copy to:

> Perkins Coie LLP
> 1201 Third Ave., 40th Floor
> Seattle, WA 98101-3099
> Fax: (206) 583-8500
> Attention: Stephen Graham

Naveen Jain:

> InfoSpace.com, Inc.
> 15375 N.E. 90th Street
> Redmond, WA 98052
> Fax: (425) 882-0988

with a copy to:

> Bruce Robertson
> Garvey, Schubert & Barer
> 1191 Second Avenue
> Seattle, WA 98101
> (206) 464-0125

10.  DUTIES AND LIABILITY OF ESCROW AGENT

The Escrow Agent may act on any instrument or other writing believed by the Escrow Agent to be genuine and to be signed or presented by the proper person and

-8-

ISPK 00008

```
[[1]]FINEDC:[17557.EX10_26]00009.PIP      EDGAR only          EDG: 11-DEC-1998 17:44   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                  S-1            R.R. Donnelley    (206) 389-8900       WP2EDG
```

\<PAGE\>

shall not be liable in connection with the performance by the Escrow Agent of its duties pursuant to the provisions of this Agreement, except for its own willful default or gross negligence. The Escrow Agent shall be, and hereby is, jointly and severally indemnified and saved harmless, by the parties hereto, from all losses, costs and expenses that may be incurred by it as a result of its involvement in any litigation arising from performance of its duties hereunder, provided that such litigation shall not result from any action taken or omitted by the Escrow Agent and for which it shall have been adjudged negligent.

11.  SUCCESSORS

    This Agreement and all action taken hereunder in accordance with its terms shall be binding on and inure to the benefit of the Board, the Company and the Escrow Agent and their respective successors and assigns, and Mr. Jain and their respective successors, assigns, heirs, executors, administrators and legal representatives.

12.  SUBSTITUTION OF ESCROW AGENT

    The Escrow Agent, or any successor to it hereafter appointed, may at any time resign by giving notice in writing to the Board, the Company and Mr. Jain and shall be discharged of its duties hereunder upon the appointment of a successor Escrow Agent as hereinafter provided. In the event of any such resignation, a successor Escrow Agent, who shall be a shall be appointed by the Board. Any such successor Escrow Agent shall deliver to the Board, the Company and Mr. Jain a written instrument accepting such appointment hereunder, and thereupon it shall succeed to all the rights and duties of the Escrow Agent hereunder.

13.  APPOINTMENT OF ESCROW AGENT

    The Board, the Company and Mr. Jain hereby appoint the Company as the Escrow Agent to serve in accordance with the terms of this Agreement for the period beginning on the date hereof and ending six months from the date hereof, during which period the Company, the Board and Mr. Jain shall conduct a good faith search to find a successor Escrow Agent that is mutually agreeable to all the parties. The Company hereby agrees to act as Escrow Agent under this Agreement.

14.  FEE OF ESCROW AGENT

    The Company shall pay the fees of the Escrow Agent serving under this Agreement, if any.

-9-

ISPK 00009

[[1]]FINEDG:[17557.EX10_26]00010.PIP     EDGAR only          EDG: 11-DEC-1998 17:46   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.                 S-1          R.R. Donnelley      (206) 389-8900         WP2EDG

<PAGE>

### 15.  ENTIRE AGREEMENT

This Agreement is the entire agreement of the parties regarding its subject
matter and supersedes all prior written or oral communications or agreements.

### 16.  SEVERABILITY

The provisions of this Agreement shall be severable. If this Agreement or
any portion shall be invalidated on any ground by any court of competent
jurisdiction, then the remainder of this Agreement shall not be affected thereby
and shall be given full force and effect and remain binding upon the parties.

### 17.  GOVERNING LAW

This Agreement and the rights and obligations of the parties shall be
governed by and construed in accordance with the laws of the state of
Washington, without giving effect to principles of conflicts of law.

### 18.  COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which
shall be deemed an original, but all of which together shall constitute one
instrument.

### 19.  AMENDMENTS; WAIVERS; ADDITION OF NEW BOARD MEMBERS

(a)  Neither this Agreement nor any provision may be amended except by
written agreement signed by the parties. No waiver of any breach or default
shall be considered valid unless in writing, and no such waiver shall be deemed
a waiver of any subsequent breach or default.

(b)  Notwithstanding the foregoing, this Agreement shall be deemed
automatically amended to include as a party and a member of the Board each
additional director elected or appointed to the Company's board of directors.

### 20.  SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon Mr. Jain and his successors and
assigns, and inure to the benefit of the Board and the Company and their heirs,
legal representatives and assigns.

(Signature page follows)

-10-

ISPK 00010

[[2]]FIXEDC:[17557.EX10_26]00011.PIP    EDGAR only         EDC: 11-DEC-1998 19:58    BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.              S-1         R.R. Donnelley    (206) 389-8900         26354  V2.7-5  •••

<PAGE>

   IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

                                    INFOSPACE.COM, INC.

                                    /s/ John Cunningham
                                    _____
                                    By:
                                    Title:

                                    NAVEEN JAIN

                                    /s/ Naveen Jain
                                    _____


                                    THE BOARD:

                                    PETER CURRIE

                                    /s/ Peter Currie
                                    _____


                                    GARY LIST

                                    /s/ Gary List
                                    _____


                                    CARL STORK

                                    /s/ Carl Stork
                                    _____


                                    -11-



ISPK 00011

[[1]]FINTDG:[17557.EX10_26]00012.PTP   EDGAR only        EDG: 11-DEC-1998 20:00   BLK: 00-000-0000 00:00
[[1]]InfoSpace.com, Inc.              S-1        R.R. Donnelley   (206) 389-8900        26354  V2.7-5  ···

<PAGE>

JOHN E. CUNNINGHAM, IV.

/s/ John Cunningham
_____


BERNEE D. L. STROM

/s/ Bernee Strom
_____


RUFUS W. LUMRY

/s/ Rufus Lumry
_____

-12-

ISPK 00012

# EXHIBIT 6

## Indemnification Agreement

This Indemnification Agreement (this "*Agreement*") dated as of December 11, 1998 is made between Naveen Jain ("*Mr. Jain*"), InfoSpace.com, Inc., a Delaware corporation (the "*Company*") and all the current and future members of the Company's board of directors (excluding Mr. Jain) (the "*Board*"). Collectively, the Company and the members of the Board shall be referred to herein as the "*Indemnified parties*".

### RECITAL

To induce the Company's current and future directors to accept the position of, or to continue to serve as, directors of the Company, Mr. Jain has agreed to indemnify the Board and the Company against certain losses.

### AGREEMENT

1.    **Indemnification of the Company and the Board**

(a)    Mr. Jain agrees to hold harmless and indemnify the Company and the Board from and against all losses, liabilities, damages or expenses incurred by the Company or the Board that result from any obligation or liability arising out of or in connection with each of the following (collectively, the "Losses"):

(i)    the hiring or termination of any employee or consultant of the Company on or before September 30, 1998;

(ii)    any commercial contract of the Company entered into on or before September 30, 1998 (including but not limited to contracts with vendors, suppliers, content providers, affiliates, licensees and licensors); provided, however, that this Section shall not apply to any ordinary-course-of-business dispute arising out of any written commercial contract that was disclosed in the corporate records delivered to the Company's general outside counsel prior to September 30, 1998, unless such dispute relates to the oral modification or termination of such commercial contract;

(iii)    the issuance of the Company's common stock ("*Shares*") or options to acquire Shares as the result of claims or potential claims not known to the Board prior to September 30, 1998,

ISPK 00358

except for such issuances involving, in the aggregate, 20,000 or fewer Shares;

(iv)   the issuance of Shares or options to acquire Shares as the result of claims or potential claims, known to the Board on September 30, 1998, to the extent any such issuance in the aggregate involves the issuance of more than 500,000 shares;

(v)   any act of fraud by Mr. Jain occurring on or before September 30, 1998; and

(vi)   any claim, or potential claim, known to Mr. Jain on the date of this Agreement and not disclosed to the Board on or prior to the date of this Agreement.

(b)   Notwithstanding the foregoing, the indemnification provided hereby shall be unavailable for any obligation or liability of the Company (other than any obligation or liability set forth in Section 1(a)(iv) above) (i) that is specifically reflected or reserved against in the Company's financial statements for the fiscal years ended 1996, 1997 and the nine-month period ended September 30, 1998, or (ii) that was disclosed in the corporate records delivered to the Company's general outside counsel prior to September 30, 1998.

## 2.   Limitations

(a)   Claims for indemnification made under this Agreement may be made only during the period from the date hereof until five years after the date hereof.

(b)   No indemnified party shall be entitled to receive any indemnification payment with respect to claims for indemnification made under Section 1, until aggregate Losses that all indemnified parties would be otherwise entitled to receive as indemnification exceed $100,000 (the "*Threshold*"); provided, however, that once such aggregate Losses exceed the Threshold, such party shall be entitled to receive indemnification payment for the aggregate Losses that they would be entitled to receive without regard to the Threshold.

(c)   The maximum aggregate amount that the indemnified parties shall be entitled to under Section 1 is the Escrow Fund (as defined below).

INDEMNIFICATION AGREEMENT
[28096-0100/2B9E3440.314]                              -2-                              2/11/99

ISPK 00359

06/23/2003 10:35 FAX 2066238717   Fax Received: 06/23/2003 10:33AM * Pg 4/15   ☑004

## 3.    Procedure

(a)    Any indemnified party hereto seeking indemnification hereunder shall notify Mr. Jain in writing reasonably promptly after the assertion against the indemnified party of any claim by a third party or a derivative claim (a *"Third-Party Claim"*) in respect of which the indemnified party intends to base a claim for indemnification hereunder, but the failure or delay to so notify Mr. Jain shall not relieve himof any obligation or liability that hemay have to the indemnified party except to the extent that Mr. Jain demonstrates that his ability to defend or resolve such Third Party Claim is adversely affected thereby.

(b)    (i)    Mr. Jain shall have the right, upon written notice given to the indemnified party within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, to assume the defense or handling of such Third Party Claim, at Mr. Jain's sole expense, in which case the provisions of Section 3(b)(ii) below shall govern. (ii) Mr. Jain shall select counsel reasonably acceptable to the indemnified party in connection with conducting the defense or handling of such Third Party Claim, and Mr. Jain shall defend or handle the same in consultation with the indemnified party, and shall keep the indemnified party timely apprised of the status of such Third Party Claim, and shall not, without the prior written consent of the indemnified party, directly or indirectly assume any position or take any action that would impose any obligation of any kind on or restrict the actions of the indemnified party.  Mr. Jain shall not, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, agree to a settlement of any Third Party Claim that could directly or indirectly lead to liability or create any financial or other obligation on the part of the indemnified party for which the indemnified party is not entitled to indemnification hereunder.  The indemnified party shall cooperate with Mr. Jain and shall be entitled to participate in the defense or handling of such Third Party Claim with its own counsel and at its own expense.  Notwithstanding the foregoing, in the event Mr. Jain fails to conduct the defense or handling of any Third Party Claim in good faith after having assumed such defense or handling, then the provisions of Section 3(c)(ii) below shall govern.

(c)    (i)    If Mr. Jain does not give written notice to the indemnified party, within 30 days after receipt of the notice from the indemnified party of any Third Party Claim, of Mr. Jain's election to assume the defense or handling of such Third Party Claim, the provisions of Section 3(c)(ii) below shall govern. (ii) The indemnified party may select counsel in connection with conducting the defense or handling of such Third Party Claim and defend or handle such Third Party Claim in such manner as it may deem appropriate, provided, however, that the indemnified party shall keep Mr. Jain timely apprised of the status of such Third Party Claim.  If

INDEMNIFICATION AGREEMENT
[23096-0160/SB983440.314]                                        -3-                                                    2/11/99

ISPK 00360

Fax Received: 06/23/2003 10:33AM * Pg 5/15
06/23/2003 10:36 FAX 2066238717                                                    ☒005

the indemnified party defends or handles such Third Party Claim, Mr. Jain shall cooperate with the indemnified party and shall be entitled to participate in the defense or handling of such Third Party Claim with his own counsel and at his own expense. If the indemnified party is not the prevailing party in such Third Party Claim, then Mr. Jain shall pay all reasonable fees and expenses of counsel incurred by the indemnified party in connection with the defense and handling of such Third Party Claim. In the event such Third Party Claim is settled by the indemnified party, Mr. Jain shall pay the fees and expenses of counsel incurred by the indemnified party but only if the amount of such settlement is over $50,000.

(d)     If the indemnified party intends to seek indemnification hereunder, other than for a Third Party Claim, then it shall notify Mr. Jain in writing within six months after its discovery of facts upon which it intends to base its Claim for indemnification hereunder, but the failure or delay so to notify Mr. Jain shall not relieve Mr. Jain of any obligation or liability that Mr. Jain may have to the indemnified party except to the extent that Mr. Jain demonstrates that Mr. Jain's ability to defend or resolve such Claim is adversely affected thereby.

## 4.     Establishment of Escrow Fund

(a)     On the date hereof, Mr. Jain shall deliver to the Escrow Agent certificates representing 1,000,000 shares of the Company's Common Stock (the "*Escrowed Stock*"), along with an assignment separate from such certificate properly endorsed for assignment in blank. The Escrowed Stock and all cash or proceeds obtained by the Escrow Agent hereunder (including, without limitation, proceeds from the sale of the Escrowed Stock by the Escrow Agent or Mr. Jain under Section 4(c) hereof) shall be referred to as the "*Escrow Fund*".

(b)     Mr. Jain will have all rights to the Escrowed Stock, including, without limitation, the right to vote the Escrowed Stock and the right to receive cash dividends in respect of the Escrowed Stock; provided, however, that, until this Agreement is terminated pursuant to Section 8, the Escrow Agent shall have (i) the right to possess the Escrowed Stock and (ii) the right to receive securities or other property in exchange therefor or in respect thereof or dividends (other than cash dividends) or other distributions thereon or with respect thereto.

(c)     Mr. Jain will have the right to sell the Escrowed Stock, provided that all the proceeds of such sale remain part of the Escrow Fund and available for payment to an indemnified party pursuant to Section 6 until this Agreement is terminated pursuant to Section 8. Any such sale shall be made only through a brokers' transaction on the open market for cash consideration. Mr. Jain shall be entitled to invest the proceeds of such sale in a manner consistent with the Company's

INDEMNIFICATION AGREEMENT

ISPK 00361

investment policy as established by the Board, and to the extent that the face amount of such investment plus accrued interest exceeds the consideration received for the Escrowed Stock sold by Mr. Jain, such excess funds may be withdrawn by Mr. Jain.

**5.    Claims on Escrow Fund**

(a)    If the indemnified party shall incur Losses, it shall within ten days of learning of facts giving rise to the claim for Losses deliver to the Escrow Agent and Mr. Jain a certificate (a "*Claim Certificate*") signed by a member of the Board or an officer of the Company stating that one or more members of the Board and/or Company has incurred the Losses specified in such Claim Certificate and setting forth in reasonable detail the facts giving rise to the claim and the basis for the claim.

(b)    Mr. Jain shall have 20 business days after delivery to the Escrow Agent of any Claim Certificate to give to the Escrow Agent and the Board or the Company, as the case may be, written notice of a dispute ("*Dispute Notice*") with respect to such Claim Certificate setting forth in reasonable detail the nature of the dispute.

(c)    If at the end of the 20-day period described in Section 5(b) the Escrow Agent shall not have received a Dispute Notice with respect to any Claim Certificate, such Claim Certificate shall constitute full authority to the Escrow Agent to proceed to pay pursuant to the provisions of Section 6 the Losses specified in such Claim Certificate; provided, however, that, if the Escrow Agent shall have received a Dispute Notice, the Escrow Agent shall not pay any part of the Escrow Fund to the indemnified party until notified of the resolution of the dispute pursuant to the provisions of Section 8.

**6.    Payment of Claims**

The Escrow Agent shall pay a Claim Certificate in cash or by selling such number of shares of the Escrowed Stock (or any proceeds or investment resulting from the sale of the Escrowed Stock under Section 4(c) hereof) that shall have a value equal to the amount stated in the Claim Certificate.  In the event that the Claim Certificate states a claim payable in the Company's Common Stock, the Escrow Agent shall pay such claim by transferring, delivering and assigning to the Board or the Company, as the case may be, such number of shares of the Escrowed Stock stated in the Claim Certificate.

**7.    Dispute Resolution**

Any dispute with respect to any Claim Certificate or any other provision of this Agreement shall be resolved as follows:

INDEMNIFICATION AGREEMENT
[30096-0100/SB003440.314]                    -5-                    2/11/99

ISPK 00362

Fax Received: 06/23/2003 10:33AM * Pg 7/15
06/23/2003 10:37 FAX 2066238717                                                    ☑007

(a)     The disputing parties shall first attempt to settle the dispute.  Any settlement shall be reflected in writing and delivered to the Escrow Agent. The Escrow Agent shall act according to such written settlement agreement.

(b)     If within 30 days of when the Dispute Notice was delivered to the Escrow Agent the disputing parties have not arrived at a settlement agreement, the dispute shall be submitted to arbitration as follows:

(i)     the Board shall select one arbitrator, Mr. Jain shall select one arbitrator  and the Board and Mr. Jain together shall select a third arbitrator;

(ii)     The arbitration shall then be resolved in accordance with the Commercial Arbitration Rules of the American Arbitration Association;

(iii)     Judgment may be rendered upon the award determined by the arbitrators in any court having jurisdiction thereof;

(iv)     Should an injunction be sought, the amount of any bond required shall not exceed $500; and

(v)     Within ten days of receiving notice of an arbitration award, unless restrained by court order, the Escrow Agent shall act according to the mandate of such arbitration award.

**8.     Termination**

(a)     The escrow provided for herein shall terminate five years after the date hereof (the "*Termination Date*")

(b)     Notwithstanding the provisions of (a) and (c) of this Section 8, if the Board or the Company shall in good faith, prior to the Termination Date, have filed with the Escrow Agent and Mr. Jain a certificate signed by a member of the Board (on behalf of the entire Board) to the effect that an item of Losses (the maximum amount of which shall be specified in good faith in such certificate) has been incurred by or asserted against the Board or the Company, in respect of the settlement or discharge of which the Board or the Company would be entitled to receive a payment under this Agreement, and that the existence or the amount of such Losses remains undetermined, then the Escrow Agent shall withhold from distribution that would otherwise be made pursuant to Section 8(c) a number of shares of Escrowed Stock that shall have a value equal to the maximum amount of such item of Losses as set forth in such certificate, and shall distribute the remainder of the Escrow Fund deliverable under Section 8(c) to Mr. Jain.

i

ISPK 00363

Fax Received: 06/23/2003 10:33AM * Pg 8/15
06/23/2003 10:37 FAX 2066238717                                                    @008

      (c)     Upon the termination of the escrow as aforesaid, the Escrow Agent shall disburse and Mr. Jain shall be entitled to receive that portion of the Escrow Fund as to which the escrow shall have so terminated.  Any delivery of shares of Escrowed Stock pursuant to this Section 8(c) shall be of full shares, and the Escrow Agent shall sell the number of shares of Escrowed Stock that shall equal the aggregate of all fractions to which Mr. Jain would otherwise be entitled. Promptly after the resolution of any item of Losses that was asserted but not resolved by the Termination Date, the Escrow Agent shall deliver to the Board or the Company, as the case may be, such portion of the Escrow Fund to which it is entitled and shall deliver the balance of the Escrow Fund to Mr. Jain.

**9.**    **Notices**

      Unless written designation of a different address is filed with each of the other parties hereto, all notices required to be given under this Agreement shall be deemed to have been properly given if mailed by registered mail, addressed as follows:

ISPK 00364

the Board or the Company:

> Mr. John E. Cunningham IV
> c/o Perkins Coie LLP
> 1201 Third Avenue, 40th Floor
> Seattle, WA 98101-3099
> Fax: (206) 583-8500
> Attention: Stephen Graham

with a copy to:

> Perkins Coie LLP
> 1201 Third Ave., 40th Floor
> Seattle, WA 98101-3099
> Fax: (206) 583-8500
> Attention: Stephen Graham

Naveen Jain:

> InfoSpace.com, Inc.
> 15375 N.E. 90th Street
> Redmond, WA 98052
> Fax: (425) 882-0988

with a copy to:

> Bruce Robertson
> Garvey, Schubert & Barer
> 1191 Second Avenue
> Seattle, WA 98101
> (206) 464-0125

## 10.   Duties and Liability of Escrow Agent

The Escrow Agent may act on any instrument or other writing believed by the Escrow Agent to be genuine and to be signed or presented by the proper person and shall not be liable in connection with the performance by the Escrow Agent of its

INDEMNIFICATION AGREEMENT
[28096-0100/KB983440.314]                     -8-                                     2/11/99

ISPK 00365

06/23/2003 10:37 FAX 2066238717   Fax Received: 06/23/2003 10:33AM * Pg 10/15   ☑010

duties pursuant to the provisions of this Agreement, except for its own willful default or gross negligence. The Escrow Agent shall be, and hereby is, jointly and severally indemnified and saved harmless, by the parties hereto, from all losses, costs and expenses that may be incurred by it as a result of its involvement in any litigation arising from performance of its duties hereunder, provided that such litigation shall not result from any action taken or omitted by the Escrow Agent and for which it shall have been adjudged negligent.

11.     **Successors**

        This Agreement and all action taken hereunder in accordance with its terms shall be binding on and inure to the benefit of the Board, the Company and the Escrow Agent and their respective successors and assigns, and Mr. Jain and their respective successors, assigns, heirs, executors, administrators and legal representatives.

12.     **Substitution of Escrow Agent**

        The Escrow Agent, or any successor to it hereafter appointed, may at any time resign by giving notice in writing to the Board, the Company and Mr. Jain and shall be discharged of its duties hereunder upon the appointment of a successor Escrow Agent as hereinafter provided. In the event of any such resignation, a successor Escrow Agent, who shall be a shall be appointed by the Board. Any such successor Escrow Agent shall deliver to the Board, the Company and Mr. Jain a written instrument accepting such appointment hereunder, and thereupon it shall succeed to all the rights and duties of the Escrow Agent hereunder.

13.     **Appointment of Escrow Agent**

        The Board, the Company and Mr. Jain hereby appoint the Company as the Escrow Agent to serve in accordance with the terms of this Agreement for the period beginning on the date hereof and ending six months from the date hereof, during which period the Company, the Board and Mr. Jain shall conduct a good faith search to find a successor Escrow Agent that is mutually agreeable to all the parties. The Company hereby agrees to act as Escrow Agent under this Agreement.

14.     **Fee of Escrow Agent**

        The Company shall pay the fees of the Escrow Agent serving under this Agreement, if any.

INDEMNIFICATION AGREEMENT
[28096-0100/SB983440.314]                    -9-                                    2/11/99

ISPK 00366

Fax Received: 06/23/2003 10:33AM * Pg 11/15
06/23/2003 10:38 FAX 2086238717                                                    ☑011

**15.   Entire Agreement**

This Agreement is the entire agreement of the parties regarding its subject matter and supersedes all prior written or oral communications or agreements.

**16.   Severability**

The provisions of this Agreement shall be severable.  If this Agreement or any portion shall be invalidated on any ground by any court of competent jurisdiction, then the remainder of this Agreement shall not be affected thereby and shall be given full force and effect and remain binding upon the parties.

**17.   Governing Law**

This Agreement and the rights and obligations of the parties shall be governed by and construed in accordance with the laws of the state of Washington, without giving effect to principles of conflicts of law.

**18.   Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

**19.   Amendments; Waivers; Addition of New Board Members**

(a)   Neither this Agreement nor any provision may be amended except by written agreement signed by the parties.  No waiver of any breach or default shall be considered valid unless in writing, and no such waiver shall be deemed a waiver of any subsequent breach or default.

(b)   Notwithstanding the foregoing, this Agreement shall be deemed automatically amended to include as a  party and a member of the Board each additional director elected or appointed to the Company's board of directors.

**20.   Successors and Assigns**

This Agreement shall be binding upon Mr. Jain and his successors and assigns, and inure to the benefit of the Board and the Company and their heirs, legal representatives and assigns.

**(Signature page follows)**

INDEMNIFICATION AGREEMENT
[22096-0100/EB983440.314]                              -10-                                    2/11/99

ISPK 00367

Fax Received: 06/23/2003 10:33AM * Pg 12/15
06/23/2003 10:38 FAX 2066238717                                          ☑012

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

INFOSPACE.COM, INC.

By:
Title:

NAVEEN JAIN

THE BOARD:

PETER CURRIE

GARY LIST

CARL STORK



IN WITNESS WHEREOF, the parties hereto have executed this Agreement on and as of the day and year first above written.

INFOSPACE.COM, INC.

By: _____
Title:

**NAVEEN JAIN**

THE BOARD:

PETER CURRIE

_____

GARY LIST

_____

CARL STORK

_____

ISPK 00369

        IN WITNESS WHEREOF, the parties hereto have executed this Agreement on
and as of the day and year first above written.

                                    INFOSPACE.COM, INC.


                                    /s/ John E. Cunningham
                                    By:
                                    Title:


                                    NAVEEN JAIN


                                    /s/ Naveen Jain


                                    THE BOARD:

                                    PETER CURRIE


                                    /s/ Peter Currie


                                    GARY LIST


                                    /s/ Gary List


                                    CARL STORK


                                    /s/ Carl Stork


INDEMNIFICATION AGREEMENT
[28096-0190/SB983440.314]                   -11-                          2/11/99


ISPK 00370

JOHN E. CUNNINGHAM, IV.


/s/ John E. Cunningham, IV


BERNEE D. L. STROM


/s/ Bernee D. L. Strom


RUFUS W. LUMRY


/s/ Rufus W. Lumry


INDEMNIFICATION AGREEMENT
[23096-0100/EB003440.314]                    -12-                        2/11/99

ISPK 00371